# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTY G. MASSEUR<br>1298 Highway 613<br>Lucevale, MS 39452<br><br>and<br><br>TAYLOR ALLEN<br>3924 S. Cherry St.<br>Pine Bluff, AR 71603<br><br>and<br><br>MELISSA M. GEORGE<br>49292 County 3<br>Bemidji, MN 56601<br><br>*On behalf of themselves and all others similarly situated*,<br><br>          *Plaintiffs*,<br><br>          vs.<br><br>THE UNITED STATES POSTAL SERVICE<br>475 L'Enfant Plaza SW, Washington, D.C. 20260;<br><br>THE UNITED STATES POSTAL SERVICE BOARD OF GOVERNORS<br>475 L'Enfant Plaza SW, Washington, D.C. 20260;<br><br>LOUIS DEJOY<br>in his official capacity as Postmaster General of the United States and member of the United States Postal Service Board of Governors;<br>475 L'Enfant Plaza SW, Washington, D.C. 20260;<br><br>DOUGLAS TULINO<br>in his official capacity as Deputy Postmaster General of the United States and member of the United States Postal Service Board of Governors;<br>475 L'Enfant Plaza SW, Washington, D.C. 20260; | Civil Action No.: 1:23-CV-2129<br><br><br><br><br><br><br><br>**COMPLAINT – COLLECTIVE ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

ROBERT M. DUNCAN
in his official capacity as a member of the United
States Postal Service Board of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

ROMAN MARTINEZ
in his official capacity as Chairman and member
of the United States Postal Service Board of
Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

DONALD L. MOAK
in his official capacity as a member of the United
States Postal Service Board of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

WILLIAM D. ZOLLARS
in his official capacity as a member of the United
States Postal Service Board of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

ANTON G. HAJJAR
In his official capacity as Vice Chairman and
member of the United States Postal Service Board
of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

AMBER F. MCREYNOLDS
in her official capacity as a member of the United
States Postal Service Board of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

RONALD A. STROMAN
in his official capacity as a member of the United
States Postal Service Board of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

DANIEL TANGHERLINI
in his official capacity as a member of the United
States Postal Service Board of Governors;
475 L'Enfant Plaza SW, Washington, D.C. 20260;

DEREK KAN
in his official capacity as a member of the United
States Postal Service Board of Governors;

475 L'Enfant Plaza SW, Washington, D.C. 20260,

Defendants.

Plaintiffs Christy G. Masseur, Taylor Allen, and Melissa M. George by and through their attorneys, on behalf of themselves and others similarly situated, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, allege the following:

## I.     INTRODUCTION

1.      "Despite the health benefits of breastfeeding for both mothers and infants, too many nursing employees face obstacles to pumping breast milk in the workplace, making it difficult to continue breastfeeding while employed. Break time and a private space to express breast milk are critical [] supports for breastfeeding employees."[1]  The House of Representatives reached these conclusions in 2021 after more than a decade of considering the plight of working mothers around the country. Since 2010, the Fair Labor Standards Act of 1938 ("FLSA") has required employers to provide nursing accommodations, but "[g]aps in the law limit access to [its] protections and le[ft] employees unable to recover in court when their employers fail to comply with the law's requirements."[2]  Therefore, Congress passed, and on December 29, 2022, the President signed, the Providing Urgent Maternal Protections for Nursing Mothers Act (the "PUMP Act") to extend the FLSA protections "to more employees and ensure employees can recover appropriate forms of relief in court when employers violate the law."[3]

2.      Despite being required to comply with the FLSA breastfeeding requirements for more than a decade, after the PUMP Act came into effect in April 2023, the United States Postal Service ("USPS" or "Defendant") still failed and continues to fail to accommodate its maternal

---

[1] H.R. Rep. 117-102, at 3 (2021), *available at* https://www.congress.gov/117/crpt/hrpt102/ CRPT-117hrpt102.pdf.

[2] *Id.*

[3] *Id.*

employees' requests for minimum appropriate break times and space to express breast milk in private. Many employees are forced to pump breast milk in locker rooms, bathrooms, or other unsanitary, non-private, and uncomfortable places because USPS fails to provide its employees with a "reasonable break time for an employee to express breast milk" and fails to provide a "place…that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," all of which is mandated by the PUMP Act. Defendants' failure to provide sufficient lactation accommodation is a systemic issue that has impacted employees at offices throughout the country.

3.    Given this nationwide issue, Plaintiffs bring this collective action lawsuit against USPS, the USPS Board of Governors (the "Board"), and the individual members of the Board during the relevant time period (collectively, "Defendants") for violating the FLSA as amended by the PUMP Act, 29 U.S.C. § 218d(a)(1) and (2).

4.    It has long been known that breastfeeding is crucial for a newborn baby and has numerous benefits for the mother and the child. The American Academy of Pediatrics[4] recommends breastfeeding exclusively for at least the first six months after birth and, ideally, until or after the child is twelve months of age. Breast milk is an organic superfood that provides the essential nutrients and antibodies required for a baby's healthy growth and development. It can reduce the risk of various illnesses and infections and can strengthen the emotional and psychological development of the infant. Breastfeeding also has mental and physical benefits for the mother and for society at large.

---

[4] Along with the World Health Organization, the U.S. Surgeon General's Office, and the American Academy of Family Physicians. *See* the Office of Personnel Management, *Guide for Establishing a Federal Nursing Mother's Program* (January 2013), at 2. Available at: https://www.opm.gov/policy-data-oversight/worklife/news/2013/1/opm-publishes-new-guide-for-establishing-a-federal-nursing-mother-s-program/ (last accessed April 11, 2023).

5.      Not providing supportive accommodations for nursing mothers can have a negative impact on their physical, mental, and emotional health. Mothers who are unable to pump breast milk can experience engorgement, which can be painful and lead to infection. They also produce less milk for their babies. Not having sufficient time or space to pump can also result in increased feelings of stress, anxiety, and guilt for not being able to provide their babies with the best possible nutrition. Over the last ten years, multiple studies have shown that parents who did not have access to a private place to pump breast milk were more likely to experience anxiety, postpartum depression, and stress.

6.      Despite the overwhelming consensus about the benefits of breastfeeding, discrimination against breastfeeding workers remains a widespread issue. A report released by the University of California in 2016 found that "three out of every five mothers work for employers who do not provide reasonable break time and private space for pumping breast milk."[5]

7.      To ensure that employers provide reasonable break times and a private, non-bathroom space for breastfeeding employees to pump at work, in 2010, Congress passed the Break Time for Nursing Mothers law (the "Pumping at Work Act"), which amended the FLSA to require such accommodations for individuals who needed to express breast milk while on the job. Unfortunately, the Pumping at Work Act, § 207(r) of the FLSA, covered only non-exempt employees and had such a weak enforcement mechanism that it rendered the law "virtually useless

---

[5] Morris, L., Lee J., Williams, J. C., *Exposed: Discrimination Against Breastfeeding Workers*, Center for WorkLife Law, University of California, Hasting College of the Law, Research Paper No. 328 (January 1, 2019) citing Katy B. Kozhimannil et al., *Access to Workplace Accommodations to Support Breastfeeding after Passage of the Affordable Care Act*, 26 Women's Health Issues, 6 (2016). Available at: https://worklifelaw.org/publication/breastfeeding-report/ (last accessed April 11, 2023).

in almost all practical application."[6] The 2022 PUMP Act corrected this defect by providing additional forms of relief for those harmed by their employer's failure to provide adequate time and space for nursing parents to pump. *See* 29 U.S.C. §§ 216(b) and 218d.

8.    Plaintiff Christy G. Masseur is an employee of USPS. She gave birth to her fifth child in July 2022. When she returned to work in the Fall of 2022, she requested a private space to pump milk, but USPS failed to provide one for her. In this way, USPS deprived her of her rights as a nursing mother guaranteed by the PUMP Act to a clean and secure space to express breast milk for her infant child. As a result, she was forced to pump in the breakroom, which is not sanitary or private.

9.    Plaintiff Taylor Allen also is an employee of USPS. She gave birth to a child in 2020 and then gave birth to a second child in September 2022. When she returned to work in 2022, she asked her supervisor for a private space to pump milk, but the supervisor failed to provide an adequate space for Ms. Allen to express milk. Therefore, like Ms. Masseur, USPS deprived Ms. Allen of her rights as a nursing mother under the PUMP Act. As a result, she was forced to pump in the cargo area of a mail truck.

10.    Plaintiff Melissa M. George is an employee of USPS. She gave birth to a child in December 2022. When she returned to work in February 2023, she asked her supervisor for a private space to pump milk, but the supervisor failed to provide an adequate space for Ms. George to express milk. Therefore, like Ms. Masseur and Ms. Allen, USPS deprived Ms. George of her rights as a nursing mother under the PUMP Act. As a result, she was forced to pump in the mail

---

[6] *Hicks v. City of Tuscaloosa*, No. 13-cv-02063, 2015 U.S. Dist. LEXIS 141649, at *99 (N.D. Ala. Oct. 19, 2015).

truck. As a result of their experiences, Ms. Masseur, Ms. Allen, and Ms. George experienced a reduction in their milk supply and personally endured stress, anxiety, and emotional distress.

11.    Defendants' failure to comply with the PUMP Act has had a significant impact on Ms. Masseur, Ms. Allen, Ms. George and other breastfeeding employees. Instead of supporting breastfeeding mothers, Defendants' practices forced those mothers into a Hobson's choice between using demeaning, unsanitary spaces to express milk, abandoning pumping at work altogether, or quitting their jobs. Congress clearly declared in the PUMP Act that no mother should have to make such a choice.

12.    Plaintiffs seek redress for Defendants' violations of the PUMP Act. Plaintiffs assert two causes of action against Defendants' nationwide policy of failing to provide sufficient break time and a functional place, shielded from view and free from intrusion, which may be used by an employee to express breast milk. Plaintiffs seek injunctive and declaratory relief, compensatory and punitive damages, reasonable attorneys' fees, litigation costs, and pre-and post-judgment interest.

13.    Plaintiffs bring this claim on behalf of themselves and similarly situated former and current hourly employees of Defendants who were expressing breastmilk at any time from December 29, 2022, to the resolution of this action and who, upon request, were denied reasonable break times to express milk or denied a private, functional space to express breast milk and who elect to opt-in to this action (the "FLSA Collective").

14.    The members of the FLSA Collective are victims of Defendants' practice of refusing to provide sufficient break times or "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," as required by 29 U.S.C. § 218d.

15.     Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective by refusing to provide accommodations that they know they are obligated to provide under the PUMP Act.

16.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated employees are known to Defendants, are identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to § 216(b) of the FLSA.

## II.    **PARTIES**

17.     Plaintiff Christy G. Masseur is a current employee of USPS who works as a Mail Processing Clerk in Mobile, Alabama. Ms. Masseur is an individual resident of Hurley, Mississippi, and a citizen of Mississippi. During all relevant times, Ms. Masseur was the mother of an infant that was breastfed and continued to be breastfed while Ms. Masseur was working for USPS. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto.

18.     Plaintiff Taylor Allen is a current employee of USPS who works as a City Mail Carrier in Pine Bluff and White Hall, Arkansas. Ms. Allen is an individual resident of Jefferson County and a citizen of Arkansas. During all relevant times, Ms. Allen was the mother of infants that were primarily breastfed and continued to be breastfed while Ms. Allen was working for USPS.  Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto.

19.     Plaintiff Melissa G. George is an employee of USPS who worked as a City Mail Carrier in Bemidji, Minnesota. Ms. George is an individual resident of Beltrami County and a

citizen of Minnesota. During all relevant times, Ms. George was the mother of an infant that was primarily breastfed while Ms. George was working for USPS. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto.

20.    At all times relevant hereto, Ms. Masseur, Ms. Allen, Ms. George and other similarly situated individuals have been entitled to the rights, protections, and benefits provided under the FLSA and the PUMP Act. At all times relevant hereto, Ms. Masseur, Ms. Allen, and Ms. George have been "employees" of USPS within the meaning of the FLSA pursuant to 29 U.S.C. § 203(e)(2)(B).

21.    The members of the FLSA Collective, including Ms. Masseur, Ms. Allen, and Ms. George are or have been employed by USPS in the last several months and have requested lactation accommodations. Upon information and belief, Defendants' practices and policies, or lack thereof, have impacted members of the FLSA Collective in the same or a similar manner across Defendants' locations.

22.    Defendant USPS is an independent agency of the executive branch of the United States federal government responsible for providing postal service in the U.S. Defendant USPS operates in every state, has over 34,000 retail locations, and delivers 48% of the world's mail.

23.    Upon information and belief, Defendant USPS has a centralized policy-making system whereby policies, practices, and guidelines, including with respect to lactation accommodations, are created and disseminated to the various branches and locations from the headquarters in Washington, D.C.

24.     Defendant USPS is an "employer" within the meaning of the FLSA pursuant to 29 U.S.C. §§ 203(a), (d) and has been the "employer" of Ms. Masseur and Ms. Allen at all times relevant hereto.

25.     Defendant USPS Board of Governors is the governing body of USPS. It is composed of nine Governors, the Deputy Postmaster General, and the Postmaster General, who are appointed by the President and confirmed by the Senate. The Board of Governors is responsible for setting policy and overseeing the operations of USPS.

26.     Louis DeJoy is the Postmaster General of the United States and the Chief Executive Officer of USPS. Upon information and belief, he is a resident of Washington, D.C. He serves as a member of the Board of Governors.

27.     Douglas Tulino is the Deputy Postmaster General and the Chief Human Resources Officer of USPS. Upon information and belief, he is a resident of Washington, D.C. He serves as a member of the Board of Governors and serves as the Board's Operations Committee.

28.     Robert M. Duncan is a member of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since August 2018 and serves on the Board's Compensation and Governance Committee.

29.     Roman Martinez IV is the Chairman of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since August 2019 and Chairman of the Board since January 2022. He chairs the Board's Audit and Finance Committee and serves on the Election Mail Committee.

30.     Donald L. Moak is a member of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since

June 2020 and chairs the Board's Compensation and Governance Committee, and serves on the Audit and Finance Committee.

31.    William D. Zollars is a member of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board of Governors since June 2020 and chairs the Board's Operations Committee.

32.    Anton G. Hajjar is the Vice Chairman of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since May 2021 and Vice Chair of the Board since January 2022. He serves on the Board's Compensation and Governance, Operations, and Election Mail Committees.

33.    Amber F. McReynolds is a member of the Board of Governors. Upon information and belief, she is a resident of Washington, D.C. She has been serving as a member of the Board since May 2021 and chairs the Board's Election Mail Committee and is a member of the Operations Committee.

34.    Ronald A. Stroman is a member of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since May 2021 and serves on the Board's Operations and Election Mail Committees.

35.    Daniel Tangherlini is a member of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since May 2022 and serves on the Board's Audit and Finance Committee.

36.    Derek Kan is a member of the Board of Governors. Upon information and belief, he is a resident of Washington, D.C. He has been serving as a member of the Board since May 2022 and currently serves on the Board's Audit and Finance and Compensation and Governance Committees.

37.    Plaintiffs are informed and believe that each and all the acts and omissions alleged herein were performed by or are attributable to Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of all Defendants were in accordance with and represent the policy of Defendants.

## III.    JURISDICTION AND VENUE

38.    This Court has jurisdiction over this matter pursuant to 39 U.S.C. § 409(a), 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

39.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant USPS is headquartered in this District, the Board of Governors is located in this District, and, upon information and belief, the individual members of the Board of Governors can be found in this District. Further, a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendants are subject to personal jurisdiction here.

## IV.    BACKGROUND

### A.    *The Benefits of Breastfeeding*

40.    There are significant and proven benefits to breastfeeding children. Breast milk is widely accepted as the optimal source of nutrition for infants, and it provides numerous protections against illnesses and diseases for infants and mothers alike.[7]

41.    Babies who are breastfed generally have better immune system development and functioning because breastmilk contains antibodies, which serve to protect developing immune

---

[7] Am. Acad. of Pediatrics. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics. 2022;150    (1):    e2022057988.    Available    at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1 (last accessed April 13, 2023).

systems from disease.[8] As a result, babies who are breastfed tend to have fewer and less severe instances of certain short-term illnesses, including bacterial meningitis, diarrhea, ear infections, respiratory infections, urinary tract infections, and certain chronic illnesses, including diabetes, lymphoma, leukemia, hypercholesterolemia, and asthma.[9]

42.    A study published in the journal JAMA Pediatrics found that breastfeeding is associated with a lower risk of childhood obesity. The study found that children who were breastfed for at least six months were less likely to be obese than children who were not breastfed.[10]

43.    At least one study found that breastfeeding is associated with a lower risk of sudden infant death syndrome ("SIDS"). The study found that babies who were breastfed for at least six months had a lower risk of SIDS than babies who were not breastfed.[11]

44.    The World Health Organization recommends that infants be exclusively breastfed for the first six months of life, meaning they should receive no other food or drink, not even water.[12]

45.    Although breastfeeding initiation and duration have consistently improved, one study revealed that 60% of women do not meet their breastfeeding goals.[13]

---

[8] Victora C. G., Bahl R., Barros A. J. D., et al., *Breastfeeding in the 21st century: epidemiology, mechanisms, and lifelong effects*. Lancet (2016); 387 (10017): 475–90.

[9] Lawrence R. A., Lawrence R. M., *Breastfeeding: A Guide for the Medical Profession*. 6th ed., at 117; Elsevier Health Sciences; January 15, 2015.

[10] Wang Y., Zhang J., Li Y., et al.., *Breastfeeding and childhood obesity: a systematic review and meta-analysis*. JAMA Pediatr. (2016); 170(8):740–746.

[11] Kramer M. S., Chalmers B., Hodnett, E. D., et al., *Breastfeeding and sudden infant death syndrome: a systematic review and meta-analysis*. Lancet (2011); 377(9780):1456–1468.

[12] *World Health Organization's (WHO) Global Strategy for Infant and Young Child Feeding*, at 7–8. Available at: https://www.who.int/publications/i/item/9241562218 (last accessed April 11, 2023).

[13] Odom E. C., Li R., Scanlon K. S., Perrine C. G., Grummer-Strawn L., *Reasons for earlier than desired cessation of breastfeeding*. Pediatrics (2013); 131:e726–e732.

46.     Society also benefits from breastfeeding. One study showed that if 90% of women in the United States breastfed exclusively for six months, it would save the country $13 billion and prevent 911 preventable infant deaths per year.[14]

47.     As discussed, the benefits of breastfeeding are significant, but there are also drawbacks to not breastfeeding. Parents who do not breastfeed suffer heightened health risks "including breast and ovarian cancers, heart disease, postpartum depression, diabetes, and rheumatoid arthritis."[15]

**B.     Proper Workplace Accommodations for Pumping Are Critical**

48.     Not having a secure space for nursing mothers can increase anxiety and feelings of being overwhelmed, which can have a negative impact on the mother's mental, physical, and emotional health. Nursing mothers who do not have adequate workplace support are at an increased risk of early weaning, illness, and job loss. Therefore, it is critical for workplaces to provide support for nursing mothers.

49.     In 2011, the U.S. Surgeon General released a Call to Action to Support Breastfeeding and noted that for employed mothers, "returning to work is a significant barrier to breastfeeding" because nursing mothers often face inflexibility and, among other things, lack a

---

[14] Morris, L., Lee, J., Williams, J., *Exposed: Discrimination Against Breastfeeding Workers*. WorkLife Law, at 7. Available at: https://worklifelaw.org/publication/exposed-discrimination-against-breastfeeding-workers/ (last accessed on May 11, 2023) (citing Bartick, M. L., & Reinhold, J. *The economic burden of suboptimal breastfeeding in the United States: a systematic review*. Pediatrics (2010); 126(3), e756–e768).

[15] *Exposed: Discrimination Against Breastfeeding Workers*, s*upra* note 11, at 7, citing Am. Acad. of Pediatrics, Policy Statement, *Breastfeeding and the Use of Human Milk*, 129 PEDIATRICS e827, 32 (2012).

private place to express milk.[16] The Call to Action found that when mothers "do not have a place to breastfeed or express breast milk, they may resort to using the restroom for these purposes, an approach that is unhygienic and associated with premature weaning."[17]

50.    A study based on data from 2011 to 2013, after the Pumping at Work Act was enacted in 2010, found that workplace accommodations are a significant predictor of breastfeeding duration.[18] The study found that nearly 50% of women reported that their postpartum employment plans affected breastfeeding-related decisions.[19] About a third of women indicated that employment posed a challenge to breastfeeding, and only 45% of women had access to a private space to pump milk.[20]

51.    A clean and secure lactation space is necessary for a mother to be able to pump milk comfortably and efficiently. Without a clean, secure space, nursing mothers can experience anxiety and stress, which can impact the mother's milk supply.

52.    The more a mother gets to pump her breast milk, the longer her milk supply/production lasts and the more breast milk the baby gets. Continuous pumping increases the chances of a longer supply of breastmilk.[21] Conversely, being unable to express milk when needed

---

[16] *The Surgeon General's Call to Action to Support Breastfeeding, Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52682/ (last accessed May 11, 2023).

[17] *Id.*

[18] Kozhimannil, K. B., Jou, J., Gjerdingen, D. K., and McGovern, P. M., *Access to workplace accommodations to support breastfeeding after passage of the Affordable Care Act*, Women's Health Issues. 2016; 26(1): 6–13.

[19] *Id.*

[20] *Id.*

[21] *See* Kent J. C., Mitoulas L. R., Cregan M. D., Doherty D. A., Hartmann P. E., *The effect of breast pumping duration on breast milk production in lactating women*. Breastfeeding Medicine. 2006; 1 (2):49–55.

can result in a decrease in the individual's milk supply, forcing an earlier-than-recommended weaning of the child.[22]

53.    When a mother's milk empties, there are neurological signals that release a hormone called prolactin, which triggers milk production.[23] Limiting the amount a mother can pump decreases the amount of emptying and therefore decreases milk production.

54.    Limiting the amount a person can pump can also lead to mastitis, an inflammation of the breast tissue that may involve infection, abscess, pain, fever, and illness.[24] Another study found that mastitis is associated with an increased risk of premature weaning.[25] Even if women do not develop mastitis or other complications from engorgement, pumping while already engorged can cause nipple trauma and bruising. Additionally, as few as four consecutive days of inadequate pumping can reduce a mother's milk supply, and it can take much longer to bring the supply back up if it ever comes back up.[26]

55.    Moreover, several studies released in the last ten years show that mothers who did not have access to a private place to pump breast milk reported feeling overwhelmed and were

---

[22] Academy of Breastfeeding Medicine. *A review of the evidence on breastfeeding management practices and their impact on breastfeeding duration* (2017). Journal of Human Lactation, 33(3), 411–422.

[23] Hartmann, R. *The Neuroendocrine Control of Lactation*. Journal of Mammary Gland Biology and Neoplasia (2007), 12(2), 109–124.

[24] *Exposed: Discrimination Against Breastfeeding Workers*, s*upra* note 2 at 7, citing Lisa Amir. & The Academy of Breastfeeding Medicine Protocol Committee, ABM Clinical Protocol #4: Mastitis, Breastfeeding Medicine, 9 (5), 239 (Revised March 2014).

[25] Cooney, S. M., Anderson, M., & Geller, P. *Mastitis and the risk of premature weaning*. Breastfeeding Medicine (2015); 10(5), 277–282.

[26] Kendall-Tackett, K. A., & Hill, D. G., *Breastfeeding management for the clinician: A problem-solving approach* (5th ed.). Jones & Bartlett Learning (2019), at 142–143.

more likely to experience anxiety, postpartum depression, and stress.[27] These studies show that workplace accommodations, like a clean and secure place to pump milk, lead to increased breastfeeding rates and reduce the risk of maternal mental health problems, such as depression and anxiety.[28] Nursing mothers who had access to supportive workplace accommodations reported feeling more confident and supported in the breastfeeding experience, which can play an important role in maternal mental health.

### C.    Employers Must Do More to Protect Breastfeeding Employees

56.    Failing to provide adequate lactation accommodations remains a prevalent issue and can often force nursing mothers to stop breastfeeding or leave the workplace altogether.

57.    A report published in 2016 by the Center for WorkLife Law at the UC Hastings College of the Law found that cases where an employer denied accommodations to or discriminated against an employee because she was breastfeeding or needed to express milk during the workday, increased 800% between 2005 and 2016.[29]

58.    According to a report released in 2019, which tracked 70 cases involving allegations of breastfeeding discrimination and retaliation that have written opinions issued

---

[27] Miller, E. A., Grummer-Strawn, L. M., & Joyal, K. *Breastfeeding, workplace accommodations, and maternal mental health: A systematic review and meta-analysis*. Maternal and Child Health Journal (2018); 22(1), 162–170; Cooney, S. M., Anderson, M., & Geller, P. *The impact of workplace breastfeeding accommodations on maternal mental health: A qualitative study*. Women's Health Issues (2017); 27(2), 132–138; Oken, E. J., Chan, Y. S., & Anderson, G. M. *Breastfeeding and maternal mental health: A systematic review*. Obstetrics & Gynecology (2013); 122(5), 1043–1051.

[28] *Id.*

[29] Calvert, C. T., *Caregivers in the Workplace: FRD Update 2016*. Center for WorkLife Law at the UC Hastings College of the Law, at 17. Available at: https://worklifelaw.org/publications/Caregivers-in-the-Workplace-FRD-update-2016.pdf (last accessed May 10, 2023).

between 2008 and April 2018, 63% of employees ended up losing their job (43% were fired and 20% resigned).[30]

59.    The women facing job loss for lack of lactation accommodation spanned from a taqueria cashier in California to a doctor in Georgia and a lawyer in New York.[31]

60.    For example, in 2019, Simone Teagle filed a lawsuit against the City of New York for the discrimination she experienced as a breastfeeding mother.[32] Teagle said that for nearly six months, she was forced to pump in a breakroom, a bathroom, the locker room, or her vehicle.[33] As a result, she "lost a lot of her milk supply."[34] The suit is still pending.

### D.    The Law Before the PUMP Act

61.    Despite this wide consensus in favor of pumping, and Congress having passed the Pumping at Work Act in 2010, for the past 12 years, a common problem faced by all nursing mothers who were not provided with sufficient lactation accommodation was the weak enforcement mechanism under the Pumping at Work Act. With limited remedies available, many of the claims in these cases based on violations of the Pumping at Work Act were dismissed.

62.    Under § 207(r) of the Pumping at Work Act, the only remedies available were for unpaid minimum wages or overtime compensation. However, because employers are not required

---

[30] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 11, at 13.

[31] *Id.* citing *Dep't of Fair Employment & Hous. v. Acosta Tacos*, No. E200708 T-0097-00se, 2009 CAFEHC LEXIS 2, at *8–10 (Cal. Fair Employment & Hous. Comm'n June 16, 2009); *Wexler v. Kennesaw Pediatrics, P.C.*, No. 16-cv-1491, 2017 U.S. Dist. LEXIS 111037, at *2–3 (N.D. Ga. July 17, 2017); *Kim v. Goldberg*, 862 F. Supp. 2d 311, 315 (S.D.N.Y. 2012).

[32] *See Teagle et al. v. The City of New York et* al., No. 19-cv-7211 (E.D.N.Y); *see also* H.R. 3110, 117th Cong. (1st Sess. 2021), at 16.

[33] *See NYPD Cop Sues City for $5 Million Amid Claims She Was Harassed for Pumping Breast Milk*, (October 18, 2018). Available at: https://news.yahoo.com/nypd-cop-sues-city-5-155315818.html (last accessed April 12, 2023).

[34] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 11, at 12.

to pay employees who take breaks to pump, it was virtually impossible to hold accountable employers who failed to provide accommodations. As one court noted, with regards to the Pumping at Work Act, "there does not appear to be a manner of enforcing the express breast milk provisions."[35]

63.    In one of a handful of cases in which the court permitted a § 207(r) claim to proceed, a postpartum bank teller was told she had to express milk in the bathroom, and when she objected on the basis that the bathroom was unsanitary, she was eventually forced to leave work in the middle of the day to go home and pump.[36] She sued her employer, and the court only permitted the suit to proceed because it found the plaintiff had alleged 40.35 hours of lost wages. The case was settled in 2017.

64.    In another case, the court only permitted a furniture salesperson's § 207(r) claim to proceed because she alleged that she had to leave the sales floor and pump in her car, which resulted in her losing sales commissions to other salespeople.[37]

65.    The Department of Labor similarly acknowledged the weak enforcement mechanism when it issued a notice stating that "[b]ecause employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks."[38]

---

[35] *Salz v. Casey's Marketing Co.*, No. 11-cv-3055, 2012 U.S. Dist. LEXIS 100399, at *7 (N.D. Iowa July 19, 2012).

[36] *See Lico v. TD Bank,* No. 14-cv-4729, 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y., 2015).

[37] *See Poague v. Huntsville Wholesale Furniture*, 369 F. Sup. 3d 1180, 1199 (N.D. Ala. 2019).

[38] *Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073, 80078.

66.    Without a proper enforcement mechanism, employers like Defendants were permitted to, and did, freely violate the Pumping at Work Act with little fear of consequence.

67.    Ensuring that working mothers have the time and space to express breastmilk is not a partisan issue. Around the time that the PUMP Act was passed, politicians from across the political spectrum expressed support for strengthening protections for lactating mothers in the workplace.

68.    In a statement issued on March 8, 2021, in recognition of International Women's Day, President Biden said: "We must ensure that women can access affordable, high-quality health care throughout their lives, including maternal health care and the ability to breastfeed."[39]

69.    Thereafter, in October 2021, Congresswomen Jaime Herrera Beutler, a Republican Congresswoman from Washington, expressed her support for the PUMP Act stating:

> Making sure moms can pump at work promotes healthier families, and it's also important to help businesses recruit and retain the workforces they need. That's why I'm pleased the House approved this business-friendly, bipartisan legislation … that simply provides moms with reasonable opportunities to pump in their workplace. I'm proud to have worked with businesses, health care stakeholders, and parents in successfully leading this legislation that supports moms in Southwest Washington who are providing for their family's health and financial security.[40]

70.    On September 27, 2021, the White House issued a statement strongly supporting the PUMP Act, stating that: No new mother should face unfair treatment in the workplace because their employer refuses to provide them with [a] . . . private, clean space needed to adequately express breast milk while at work, forcing them to choose between their health and the health of

---

[39] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/08/statement-by-president-biden-on-international-womens-day/ (last accessed May 11, 2023).

[40] https://adams.house.gov/media-center/press-releases/adams-maloney-congressional-maternity-care-caucus-black-maternal-0 (last accessed May 11, 2023).

her child, and earning a paycheck. Yet millions of new working mothers, disproportionately working mothers of color, face this challenge every day.[41]

71.    Prior to the vote on the PUMP Act, Republican Senator Lisa Murkowski stated: "With this bill, parents will be empowered to make their own choices on breastfeeding, and businesses can improve retention of valuable employees. It's a win-win-win . . . What has been a question is a women's protection at the jobsite to pump safely. If a mother chooses to breastfeed her baby, she deserves the legal protection to do so without having to worry about it impacting her career."[42]

72.    Numerous organizations outside of government also expressed strong support for the PUMP Act. For example, in a news release published on October 22, 2021, on the U.S. Breastfeeding Committee's website, Vania Leveille, Senior Legislative Counsel for the ACLU, said: "Employers in every industry should have policies in place to accommodate the needs of pregnant and breastfeeding employees but, unfortunately, that is not currently the case. Instead, too many workers are penalized, discriminated against, terminated, or left without options when they try to pump breast milk at work."[43]

73.    On the other hand, organizations that represent businesses also saw the value in passing the PUMP Act. The National Retail Federation's Senior Vice President for Government Relations told the Members of the House in a letter dated October 12, 2021, that "[t]he PUMP Act

---

[41]  https://www.whitehouse.gov/wp-content/uploads/2021/09/H.R.-3110-SAP.pdf  (last accessed May 11, 2023).

[42] https://www.newsweek.com/full-list-senators-who-voted-against-breastfeeding-workers-protections-1769450 (last accessed May 11, 2023).

[43] https://www.usbreastfeeding.org/usbc-news--blogs/pump-for-nursing-mothers-act-passes-with-bipartisan-support-in-us-house-of-representatives (last accessed May 11, 2023).

is a sound piece of bipartisan legislation that will allow nursing mothers to maintain their vital role

the American workplace."[44]

74.    Similarly, in a letter sent to all the Members of Congress, Neil L. Bradley, Chief

Policy Officer at the U.S. Chamber of Commerce, stated: "The PUMP Act is a win-win for nursing

mothers and the businesses that employ them. Employers would get clarity and a way to avoid

litigation, and nursing mothers would be able to remain in the workforce. The Chamber is pleased

to strongly support this legislation."[45]

### E.    The PUMP Act

75.    Given the acknowledged problems with the Pumping at Work Act, in late 2022,

Congress passed the PUMP Act with strong bi-partisan majorities in both houses. In the House of

Representatives, it passed with a 276-member majority,[46] and in the Senate, it passed with a near-

unanimous vote of 92 to 5.[47]

76.    On December 29, 2022, the President signed an omnibus spending bill (P.L. 117-

58), which included the PUMP Act.

---

[44] Letter from David French to the Honorable Nancy Pelosi (Oct. 12, 2021) *available at* http://d22f3d5c92fe72fd8ca1-d54e62f2f7fc3e2ff1881e7f0cef284e.r22.cf1.rackcdn.com/2021%20Hill%20Letters/NRF%20Support%20Letter%20-%20PUMP%20Act%20-%20October%2012%202021.pdf (last accessed June 22, 2023).

[45] *U.S. Chamber Letter on the PUMP Act* (Dec. 20, 2022) *available at* https://www.uschamber.com/employment-law/u-s-chamber-letter-on-the-pump-act (last accessed June 22, 2023).

[46] https://clerk.house.gov/Votes/2021331?BillNum=3110 (last accessed May 11, 2023).

[47] https://www.senate.gov/legislative/LIS/roll_call_votes/vote1172/vote_117_2_00417.htm (last accessed May 11, 2023).

77.    According to both the House bill (H.R. 3110)[48] and the relevant Senate Amendment (S. Amdt. 6595),[49] the purpose of the PUMP Act was "[t]o amend the [FLSA] to expand access to breastfeeding accommodations in the workplace, and for other purposes."

78.    Specifically, the PUMP Act amended the FLSA to include § 218d, which provides that:

> (a) An employer shall provide —
>
> ''(1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
>
> ''(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 218d.

79.    Notably, the statute states that the "employer **shall** . . . provide a place…" for nursing parents to express milk. (Emphasis added.) The word "shall" in § 218d imposes an affirmative duty on the employer to provide a clean, secure space because, as Congress found, "[a] private space to express breast milk is critical for nursing employees."[50]

80.    Importantly, the PUMP Act also strengthened the relief available by inserting specific language in § 216(b) (one of the enforcement sections of the FLSA) stating that:

> Any employer who violates the provisions of section 15(a)(3) **or 18D of this Act** [29 USCS § 215(a)(3) or 218d] **shall be liable for such legal or equitable relief as may be appropriate** to effectuate the purposes of section 15(a)(3) or 18D [29 USCS § 215(a)(3) **or 218d**], including without limitation employment, reinstatement, promotion, and the

---

[48]  https://www.congress.gov/bill/117th-congress/house-bill/3110/text (last accessed May 11, 2023).

[49]  https://www.congress.gov/amendment/117th-congress/senate-amendment/6595 (last accessed May 11, 2023).

[50]  H.R. 3110, 117th Cong. (1st Sess. 2021), at 10.

payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added, which reflects the amendments to § 216(b)).

81. Congress intended this addition to correct for the lack of enforcement provided for in the Pumping at Work Act. According to the legislative intent behind the PUMP Act, one of the purposes was to provide additional forms of relief:

> …recovery only for unpaid minimum wages or overtime compensation renders employees unable to enforce current break time and space requirements in a private right of action…even if unpaid minimum wage or overtime compensation were recoverable, lost wages are often an inadequate or inappropriate form of relief… H.R. 3110 would allow workers to seek legal ***and equitable relief***… Allowing for legal and equitable relief under H.R. 3110 will also ***allow nursing employees to recover for harm to their physical and mental health***…***including for medical costs or emotional distress, and punitive damages for this type of harm***.[51]

### F.   Guidance from the Department of Labor

82. On May 17, 2023, The U.S. Department of Labor Wage and Hour Division ("WHD") published Field Assistance Bulletin No. 2023-02 (the "FAB"), which provides guidance to agency officials responsible for enforcing the PUMP Act.[52] The FAB provides insight into how the WHD will enforce employees' rights under the PUMP Act.

83. Regarding an employee's right to breaks to pump breast milk, the FAB emphasizes that employees are entitled to a "reasonable break ***each time*** such employee has need to pump breast milk at work for one year after the child's birth. An employer may not deny a covered employee a needed break to pump."[53]

---

[51] H.R. 3110, 117th Cong. (1st Sess. 2021), at 16 (emphasis added).

[52] U.S. Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2023-02. Available at: https://www.dol.gov/sites/dolgov/files/WHD/fab/2023-2.pdf (last accessed May 24, 2023).

[53] *Id.* at 2 (emphasis in original).

84.     Regarding the space requirements, employers must provide a "functional space" that is "(1) shielded from view; (2) free from intrusion from coworkers and the public; (3) available each time it is needed by the employee; *and* (4) not a bathroom."[54]

85.     The FAB states: The location *must be functional as a space for pumping*.[55] It must have a place for the nursing employee to sit, a flat surface (other than the floor), and employees must be able to store milk while at work.[56]

86.     Further, an employer who violates a nursing mother's right to reasonable break times and a functional space to pump breast milk is liable "for appropriate legal or equitable remedies . . . . [which] may include *compensatory damages and make-whole relief*, such as economic losses that resulted from violations, *and punitive damages* where appropriate. These remedies are available regardless of whether the employee has also experienced retaliation."[57]

87.     An employee may file a private cause of action seeking appropriate remedies, and there is "*no waiting time*" for an employee bringing a private suit "to enforce the reasonable break time requirement."[58]

88.     Finally, employers are required to "post and keep posted a notice explaining the FLSA [and PUMP Act provisions] in conspicuous places in every establishment where such employees are employed."[59]

---

[54] *Id.* at 4 (emphasis in original).

[55] *Id.* (emphasis added).

[56] *Id.*

[57] *Id.* at 7 (emphasis added).

[58] *Id.* at 8 (emphasis in original).

[59] *Id.*

89.     Because the PUMP Act was recently enacted and no court has yet had the opportunity to consider how its amendments impact the FLSA, this is a case of first impression.

90.     Plaintiffs seek this Court's assistance on behalf of all nursing mothers who work and their infant children to improve breastfeeding outcomes by making clear that employers cannot deny their employees adequate lactation accommodation in the workplace.

## V.     USPS DENIES PLAINTIFFS AND OTHER EMPLOYEES THEIR RIGHTS

### A.     *Plaintiff Christy G. Masseur*

91.     Plaintiff Masseur began working for Defendants in September 2021 as a Mail Processing Clerk at a facility located at 250 St. Joseph Street in Mobile, Alabama.

92.     In July 2022, Ms. Masseur gave birth to her fifth child. She took 12 weeks off under the Family Medical Leave Act and returned to work in November 2022. Prior to taking leave, Ms. Masseur informed her supervisors, Cierre Cromwell and Denise Jones, that she would be breastfeeding her child and that she would need a private place to pump breast milk when she was at work. Ms. Masseur's supervisors informed her that she would have access to an office at the facility within which she could pump breast milk.

93.     However, when Ms. Masseur returned to work, she was dismayed to learn that she did not have access to a private place to pump breast milk. Instead, Ms. Cromwell told her that she would have to pump in the breakroom, which is an unsanitary room that is constantly being used by other employees. On information and belief, in denying Ms. Masseur an adequate location to pump, Ms. Cromwell and other supervisors were acting in compliance with USPS's policies regarding lactating mothers.

94.     Ms. Masseur found pumping in the breakroom to be uncomfortable and stressful because there were constantly people walking into the room while she was pumping. During nearly

every shift for months, other individuals would enter the breakroom while Ms. Masseur was pumping. Both men and women would access the area, and on one occasion, a custodial employee walked into the room just as Ms. Masseur was covering herself to pump. Other employees would be in the breakroom while she would pump. Most employees in the breakroom would turn away from Ms. Masseur while she was pumping, but others would face her and speak to her while she was pumping milk. One of her colleagues would even discuss work-related issues with her while she was pumping. On several occasions, colleagues would leave the breakroom and fail to close the door behind them. The breakroom was also not properly equipped for pumping, as it did not have a place to store breast milk. Ms. Masseur would store her breast milk in a lunch container with ice packs. Ms. Masseur was also concerned about the cleanliness of the room because there were bits of food left on the tables and the floor and, on occasion, ants in the breakroom.

95.    Ms. Masseur spoke to her supervisors about the situation, but they were not helpful and failed to provide any accommodation. Ms. Masseur tried to reach a compromise by asking for a room divider that could block off a section of the breakroom to be used for pumping. Even though it is not clear that such a divider would satisfy the PUMP Act, given that the breakroom would still have been unsanitary and ill-equipped for breastfeeding, Ms. Masseur's supervisors did not even provide her with this compromise solution. To date, Defendants have failed to provide basic accommodations for Ms. Masseur to pump milk at work.

96.    Further, Defendants retaliated against Ms. Masseur when she told her supervisor that she would pump during her shift. During her April 20, 2023 shift, Ms. Masseur's supervisor, Tonetha Davis, asked Ms. Masseur to switch to a different sorting machine, not in her assigned work area, at a specific time. When Ms. Masseur responded that she would be pumping then, Ms. Davis screamed at her, stating, "if you don't want to do your job, you can leave the building." Ms.

Davis instructed Ms. Masseur to collect her belongings and leave the building. Ms. Davis placed Ms. Masseur under emergency placement, escorted her out of the building, told her not to return for her following shift, and deactivated her timecard. Defendants sent Ms. Masseur a letter informing her that they were suspending her for seven days and prevented Ms. Masseur from working at least two of her assigned shifts. Defendants have not compensated her for the shifts they prevented her from working.

97.    Ms. Masseur's supervisors also told her that she would have to pump during her breaks and that she must provide a doctor's note if she wanted any additional time beyond her contractually mandated 15-minute break. Her supervisors told her that if she took more than her 15-minute break to pump, it would come out of her paycheck. Because Defendants pressured her to pump as quickly as possible, Ms. Masseur did not have enough time to eat during her breaks and experienced noticeable weight loss.

98.    Because Defendants pressured Ms. Masseur to finish pumping within the contractually mandated 15 minutes, she began recording each time she pumped as evidence of the unacceptable work environment Defendants had created. Ms. Masseur did not bid on other assignments, within USPS, at locations closer to her home with a better schedule out of fear that Defendants would, once again, pressure, retaliate, and humiliate her at a new location.

99.    As the foregoing shows, USPS did not allow Ms. Masseur to take adequate breaks "each time" she needed to pump. Ms. Masseur's supervisors failed to apprise her of the right to take as many breaks as needed and failed to accommodate her lactation needs by providing a varied schedule, despite multiple requests for accommodation from Ms. Masseur. Nor did those supervisors and managers provide Ms. Masseur with a "functional space" to express breast milk.

Instead, they retaliated against Ms. Masseur for exercising her rights. In all these ways, USPS violated the PUMP Act.

100.    Defendants' failure to provide sufficient break times and a private space to pump impacted and continues to impact Ms. Masseur mentally and physically. She has and continues to experience anxiety, humiliation, and emotional distress. She has also experienced a reduction in her milk supply.

### B.    *Plaintiff Taylor Allen*

101.    Plaintiff Allen began working for Defendants in February 2018 as a City Mail Carrier in Pine Bluff, Arkansas. She worked at the Post Office at 2901 South Fir Street and 100 East 8th Avenue.

102.    In April 2021, Ms. Allen gave birth to her first child. She took several weeks off and then returned, full-time, to work at the end of June 2021. At that time, Ms. Allen told her Postmaster, Cynthia Thompson, that she was a breastfeeding mother that would need breaks and space to pump breast milk. Defendants, acting through supervisors and Postmasters like Ms. Thompson, told her that she could either use the breakroom or the bathroom at the facility, which is unsanitary. If those options were not sufficient, Ms. Thompson instructed Ms. Allen to "figure it out." On information and belief, Ms. Thompson and other supervisors were acting in compliance with USPS's policies regarding lactating mothers.

103.    With no other adequate options available to her, Ms. Allen was forced to pump breast milk in the back of a mail truck, which was still an uncomfortable and unsanitary space ill-equipped for pumping or storing breast milk. As such, during each shift, Ms. Allen pulled her mail truck into the parking lot of a local church and went to the cargo area of the truck. The available space in the cargo area is roughly two by three feet as the rest of the truck is generally full of

parcels. There is a vent on the side of the cargo area, but there are no windows, no air conditioning, and no lights. Ms. Allen had to open the rear door of the mail truck slightly so that air could come in because the mail compartment would get extremely hot while she was pumping. This meant that the mail truck was not a secure space because any member of the public could approach the vehicle and look inside.

104.    Nor did USPS provide Ms. Allen with sufficient break times when she needed them to pump. Pursuant to a collective bargaining agreement between USPS and the National Association of Letter Carriers, City Mail Carriers like Ms. Allen are guaranteed one 30-minute lunch break (unpaid) and two ten-minute breaks (paid). Ms. Thompson told Ms. Allen to use her breaks to pump breast milk, which Ms. Allen did. However, Ms. Allen's allotted breaks were not long or frequent enough for her to pump. Generally, Ms. Allen required between 20 and 25 minutes to pump, which caused her nervousness and anxiety because she knew that she was risking being reprimanded for taking "unauthorized" breaks to pump breast milk.[60]

105.    On several occasions, when Ms. Allen returned from her route, she was approached by her supervisor about why she was stationary at certain times during her shift. Ms. Allen explained that she needed to pump and had to pull over her mail truck so she could get in the back

---

[60] USPS has automated systems that can track employees' movements while they are on their shifts. Using electronic cards or scanners, USPS is notified if a Mail Carrier remains stationary for a certain period of time. When a Mail Carrier is stationary for too long, USPS's automated systems alert the appropriate individuals, who may then reach out to the Carrier depending on the circumstances. Further, Mail Carriers are expected to finish their route within an allotted period of time. If a Carrier continuously returns after the allotted period to finish their route, they risk being disciplined. Discipline can include being issued verbal or written warnings, which can lead to suspension without pay and, with enough warnings, termination. In addition, employees may also be required to make up for the lost time or be docked pay.

to do so. Accordingly, Ms. Allen's supervisors and her Postmaster were aware that she was pumping breast milk in the back of her mail truck during her breaks.

106.    Committed to breastfeeding her child, Ms. Allen continued pumping in the back of the mail truck for months until she took some time off in June 2022, before the birth of her second child.

107.    Leading up to the birth of this second child, Ms. Allen experienced health complications and was forced to take leave before giving birth in September 2022. When Ms. Allen returned to work in October 2022, she again asked Ms. Thompson whether she would be able to take breaks and would have access to a functional space to pump breast milk. Ms. Thompson told Ms. Allen: "If I give you breaks, then I'll have to give everyone else breaks too." Ms. Thompson instructed Ms. Allen to do what she did for the last child unless Ms. Allen wanted to pump in the locker room/breakroom or use the bathroom. As with Ms. Masseur's experiences, the locker room/breakroom at Ms. Allen's post office was not private, was unsanitary, and was not properly equipped to allow pumping and storing of breast milk. Likewise, the PUMP Act specifically states that a bathroom is not an adequate space for pumping, an obvious fact for many reasons. Thus, once again, Ms. Allen was forced to pump in the back of her mail truck.

108.    Defendants had many options for Ms. Allen other than forcing her to pump breast milk in the back of a mail truck. For example, they could have accommodated Ms. Allen by:

> a.  Planning her route so that she would pass a location where she could pump, such as her residence, a post office, or another designated location;
>
> b.  Temporarily reassigning Ms. Allen to a stationary role with sufficient accommodations for pumping; or

    c.   Arrange for a designated space to be made available along her route where she could pump.

109.    Nor was Ms. Thompson correct when she said that she would have to give everyone breaks as well. Federal law required her to provide adequate breaks for Ms. Allen because she was actively pumping, but that did not require Ms. Thompson to also provide similar breaks to other employees who were not pumping. Ms. Thompson's response betrays what appears to be a prevailing approach within USPS, which is to treat mothers' requests for time and space to pump as requests for special treatment rather than as a right afforded to those mothers by federal law.

110.    In December 2022, Ms. Allen transferred to a facility in White Hall, Arkansas. She asked her new supervisor, Winsome Richardson, about breaks and a space to pump, but no accommodation was made. Ms. Richardson told Ms. Allen to "do what you got to do, just make sure the mail gets delivered." Ms. Allen continued pumping in the back of her truck until a few weeks ago.

111.    Thus, Defendants, acting through supervisors and managers, and on information and belief pursuant to organization-wide policies, did not provide Ms. Allen with sufficient break times "each time" she needed to pump. Postmaster Thompson and Ms. Richardson failed to apprise Ms. Allen of her right to take as many breaks as needed, and they failed to arrange a schedule for Ms. Allen that would accommodate her lactation needs, despite multiple requests for accommodation from Ms. Allen. Nor did those supervisors and managers provide Ms. Allen with a "functional space" to express breast milk. All these acts were in violation of the PUMP Act.

112.    Not having sufficient break times or a functional space to pump has and continues to impact Ms. Allen mentally and physically. She has and continues to experience anxiety,

exhaustion, sleeplessness, and emotional distress, which worsened her feelings of depression. She also experienced a reduction in her milk supply.

C.     ***Plaintiff Melissa M. George***

113.   Plaintiff Melissa M. George began working for Defendants in August 2020 as a City Mail Carrier in Bemidji, Minnesota, at the Post Office at 401 Irvine Avenue NW.

114.   In December 2022, Ms. George gave birth to her child. She took several weeks off and then returned, full-time, to work on February 21, 2023. At that time, Ms. George told her supervisor, David Vold, that she was a breastfeeding mother that would need breaks and space to pump breast milk. Defendants, acting through supervisors like Mr. Vold, told her to use the locker room at the back of the facility, which is unsanitary and open to other female employees. On information and belief, Mr. Vold and other supervisors were acting in compliance with USPS's policies regarding lactating mothers.

115.   Every morning Ms. George would go to the locker room and pump, and every morning female employees would enter the room and make faces or comments to her about pumping. Mr. Vold denied her request to hang a sheet in the locker room for privacy while pumping. Mr. Vold also rejected her request to use an available office to pump.

116.   At first, Ms. George would return to the facility each time she was en route and needed to pump, but Mr. Vold told her that she should not return to the facility and instead pump in her mail truck. Mr. Vold told Ms. George to pump breast milk in the mail truck, an uncomfortable and unsanitary space ill-equipped for pumping or storing breast milk.

117.   Every two to three hours each shift, Ms. George would pull her mail truck into the parking lot of a local mall or church and turn the driver's seat to face the rear of the vehicle and pump. On several occasions, members of the public would approach the mail truck and ask Ms.

George if her vehicle broke down or if she needed help. She would respond that she did not need help; she was pumping.

118.    Committed to breastfeeding her child, Ms. George continued pumping in the mail truck for months until June 2023, when, frustrated with the lack of accommodation from Defendants, she stopped pumping at work.

119.    Like Ms. Allen, Defendants had similar options for Ms. George other than forcing her to pump breast milk in the mail truck.

120.    Thus, Defendants, acting through supervisors and managers, and on information and belief pursuant to organization-wide policies, did not provide Ms. George with a "functional space" to express breast milk despite multiple requests. Defendants' failure to accommodate Ms. George violated the PUMP Act.

121.    Not having sufficient break times or a functional space to pump impacted Ms. George mentally and physically. She experienced anxiety, stress, humiliation, and emotional distress. She also experienced a reduction in her milk supply, and ultimately had to discontinue pumping at work.

### D.    *Other USPS Employees Were Denied Their Rights to Pump at Work*

122.    The foregoing are not the first instances where USPS failed to provide its employees with sufficient lactation accommodations. In November 2016, KUOW (an NPR radio station) reported that Iesha Gray was a mail carrier for USPS who was not provided with time or space to express milk.[61] Gray said her supervisors suggested that she pump in her mail truck, but she refused, saying: It was dark and filthy back there, with the mail and dust. "That's just like

---

[61] Raftery, I. *This mom's choice: Nurse her baby or quit the Postal Service* (Nov. 2016). Available at: https://kuow.org/stories/moms-choice-nurse-her-baby-or-quit-postal-service/ (last accessed May 11, 2023).

feeding a baby in the restroom."[62]  Gray asked for a temporary job at a station while she was nursing but was refused. Eventually, Gray quit her job, stating that the "USPS is not a female/family friendly work environment."[63]

123.    Shyeeda Jones, a Road Carrier Assistant, had a similar experience following the birth of her child in December 2016. Like Ms. Masseur, Ms. Allen, and Ms. George USPS did not provide Ms. Jones with a "functional space" to pump; she was forced to pump in the back of a mail truck. Ms. Jones told her supervisors when she was hired that she was a breastfeeding mother and that she would need a place to pump. Her supervisor, Linda Smith, told her she could use either the breakroom or "you could try the bathroom." Because the breakroom was open to employees and the bathroom was unsanitary, Jones was forced to pump her breast milk in the back of the mail delivery truck. Not having a clean, secure space to pump or sufficient time to do so impacted Jones mentally and physically. She experienced worsened anxiety, exhaustion, and emotional distress. In addition, her milk supply decreased. Eventually, Jones stopped pumping and left her position at USPS in 2018/19.[64]

124.    Mary Garrison is a Rural Mail Carrier who was not given sufficient break time to pump and was not provided with a secure place to pump. After returning to work in July 2021 following the birth of her child, Ms. Garrison told her supervisor, Lori Smith, and Postmaster, May Owens, that she would need breaks and a secure, functional space to pump breast milk, but USPS provided neither.

---

[62] *Id.*

[63] *Id.*

[64] The information in this paragraph is supported by a declaration from Shyeeda Jones that the undersigned have but are not filing at this time. Ms. Jones's Declaration will be filed with the court as soon as practicable.

125.    Ms. Owens insisted that Ms. Garrison use her 30-minute unpaid lunch break to pump and agreed to let her do so in Owens' office. However, the office was not a private space, and employees would come in and out often. Ms. Garrison also pumped while Ms. Owens was in the office working on her computer; Ms. Garrison turned and faced the opposite direction. When Ms. Garrison raised the issue of people walking in on her while she was pumping, Ms. Owens and Ms. Smith told her that using that office was her only option unless she wanted to use the bathroom, which she knew was unsanitary. Thereafter, Ms. Garrison began working 10-to-12-hour days and explained to Ms. Owens and Ms. Smith that she would need more time to pump and was told that anything beyond her 30-minute lunch break would be "excessive and unnecessary." Ms. Garrison continued to pump during her lunch break but frequently experienced engorgement while working, which was painful and embarrassing because milk leaked through her shirt. As a result of USPS's lack of lactation accommodation, Ms. Garrison experienced anxiety, exhaustion, and emotional distress and began taking anti-depressants. Also, not pumping enough caused her to produce less and less milk, and eventually, she stopped producing milk altogether. Ultimately, Ms. Garrison filed a complaint with the EEOC for, inter alia, failing to accommodate her lactation needs. Ms. Garrison's case is ongoing.[65]

126.    Nosarere Iduwe, a former full-time mail sorter, was also denied adequate lactation accommodation by Defendants. Ms. Iduwe had two children in three years while working for USPS, one in 2020 and another in 2021. Ms. Iduwe, a strong advocate for breastfeeding children for at least the first year of life, was confident that she would find a way to pump while working for USPS but quickly discovered that it would be very difficult to pump at work because there was

---

[65] The information in Paragraph Nos. 124 and 125 is supported by a declaration from Mary Garrison that the undersigned have but are not filing at this time. Ms. Garrison's Declaration will be filed with the court as soon as practicable.

no place for her to go that was secure and clean. She was forced to pump in her car. She repeatedly spoke to her supervisors, who knew that she was pumping in my car while at work, about not having a place to go at the facility to pump breast milk. Her supervisors took no action to try and address the issue. They told Ms. Iduwe that they would "look into it," but nothing was done. Ms. Iduwe left her position at USPS in mid-October 2022 because USPS failed to provide her with the support she needed, to which she was entitled, to continue breastfeeding her kids.[66]

127.    Lactation issues are not the only area where Defendants fall short in accommodating their maternal employees. On April 7, 2015, the Leadership Conference on Civil and Human Rights sent a letter to the Postmaster General, Megan J. Brennan, urging USPS to update its pregnancy accommodation policy.[67] The letter requested that USPS update its "outdated, unfair and potentially illegal policy" to the extent that it fails "to provide accommodations to pregnant workers that are afforded to other workers." *Id.* Upon information and belief, USPS did not institute any new policies, procedures, or guidelines in response to the letter from the Leadership Conference on Civil and Human Rights. This call for USPS to update its policy applies equally to providing sufficient breaks and spaces for pumping breast milk.

128.    Plaintiffs Masseur, Allen, and George and other nursing mothers like Iesha Gray, Shyeeda Jones, Mary Garrison, and Nosarere Iduwe rely on a positive, accepting attitude from supervisors and coworkers to feel confident in their ability to continue working during the period they are expressing milk. Nursing mothers rely on their employers to provide breaks each time

---

[66] The information in this paragraph is supported by a declaration from Nosarere Iduwe that the undersigned have but are not filing at this time. Ms. Iduwe's Declaration will be filed with the court as soon as practicable.

[67] USPS: Reform Your Pregnancy Policies to Comply with Current Law. Available at: https://civilrights.org/resource/usps-reform-your-pregnancy-policies-to-comply-with-current-law/ (last accessed May 25, 2023).

they need one and to provide a secure space to pump. Defendants failed and continue to fail to provide these accommodations.

129.   In accordance with 29 C.F.R. § 516.4, Defendants should have alerted nursing employees like Ms. Masseur, Ms. Allen, and Ms. George about their rights to sufficient lactation accommodation by posting information in conspicuous locations at the Post Offices and mail sorting facilities where their employees work. Upon information and belief, Defendants did not make such information available to ensure that employees were aware of their rights to take reasonable breaks and to have a secure place to pump.

130.   In practice, Defendants do not provide accommodations for nursing mothers. Defendants do not have an adequate or specific practice or a policy regarding lactation accommodations for nursing mothers that is enforced at USPS locations across the country. Defendants' failure to provide accommodations for nursing mothers is a violation of the law. The FLSA requires employers to provide reasonable accommodations for nursing mothers, such as break times and a private place to pump breast milk. Defendants' failure to do so denies nursing mothers their legal rights, makes it difficult for them to continue working while breastfeeding, and has impacted them mentally and physically.

131.   Defendants' failure to provide Ms. Masseur, Ms. Allen, Ms. George and others with reasonable breaks and a secure space, shielded from view to express milk, caused them anxiety and uncertainty about their ability to continue breastfeeding. Returning to work after having a baby and continuing to pump during working hours requires mothers to have stamina and persistence. It requires upkeep of fluids and nutrition to ensure a continuous flow of milk production. Sufficient time and a functional space are necessary because to begin the flow of milk, mothers must be in a relaxed and rested state, not stressed and anxious while pumping in the frequently-visited

breakroom or in the cargo bay of a mail truck. Breastfeeding in a dirty, uncomfortable space and having to worry about people seeing you can jeopardize the flow of milk and may result in mothers not being able to express as quickly as someone who is relaxed and certain that they will not be intruded upon.[68]

132.    Ms. Masseur, Ms. Allen, and Ms. George were damaged to the extent they experienced emotional distress and anxiety.

## VI.    COLLECTIVE ACTION ALLEGATIONS

133.    The "FLSA Collective" consists of all persons who have been, or currently are, employed by Defendants across the country who (1) were or are lactating (e.g., individuals who express breast milk) from December 29, 2022, to the resolution of this action, (2) were or are hourly employees of USPS, and (3) were or are not provided with a "functional space," upon request, that is (a) free from intrusion, (b) shielded from view, (c) available each time it is needed, and (d) not a bathroom; OR were denied a break to pump breast milk while at work in the year following the birth of the child.

134.    On information and belief, there are over 31,000 Post Offices in the United States. The headquarters of USPS is located at 475 L'Enfant Plaza SW., Washington, DC 20260–0010.

135.    On information and belief, there are numerous similarly situated employees who are working or worked for USPS and are or were unlawfully denied their rights under the PUMP Act.

---

[68] *See* H.R. 3110, 117th Cong. (1st Sess. 2021), at 10 ("Breastfeeding mothers must feel safe in order to let down breast milk, and a reasonable guarantee of privacy is a key part of that safety. If a nursing mother feels unsafe or emotionally distressed, her production of oxytocin may be inhibited, which can create a physiological barrier to lactation." (citation omitted)).

136.    The number of affected employees can be ascertained by Defendants based on their payroll and personnel records. Collective members may be informed of the pendency of this collective action by direct mail, Defendants' private intranet network, and publication at the various USPS locations throughout the country.

137.    Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because all class members are similarly situated. Plaintiffs and other similarly situated individuals were and continue to be female employees of Defendants who: (1) required accommodations for lactation at work from December 29, 2022, to the present; (2) work or worked as hourly employees for Defendants that were subject to the same timekeeping and break policies; and (3) informed their supervisor, manager, or Postmaster that they needed lactation accommodations at work.

138.    Further, Defendants' willful policies and practices deny and continue to deny Plaintiffs and members of the FLSA Collective their rights under the PUMP Act. Defendants' actions were willful because the PUMP Act received substantial publicity at the time of its passage and thereafter. USPS has over 200 career attorneys in offices across the country, and, therefore, Defendants knew or should have known about their obligation to provide lactation accommodation to their employees. Defendants employ over 500,000 employees and have in-house legal teams whose jobs require staying up to date with recent laws and regulations and their potential impact on USPS's operations. Further, once Plaintiffs informed their employers about the lack of accommodation, Defendants had notice of their non-compliance and, by failing to act, willfully refused to provide sufficient accommodations.

### *FIRST COUNT*

**Violation of the FLSA and PUMP Act**
**[29 U.S.C. § 218d(a)(1)]**

**(Brought on Behalf of Plaintiffs and the FLSA Collective)**

139.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

140.    Plaintiffs and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

141.    The FLSA, at 29 U.S.C. § 218d(a)(1), states that an "employer shall provide: (1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk . . . ."

142.    In violation of the PUMP Act, Defendants, throughout the relevant period, failed to provide reasonable break times for employees to express breast milk for 1 year after the child's birth each time such employee needed to express milk. . . ." 29 U.S.C. § 218d(a)(2).

143.    Defendants, through supervisors and management employees, failed to provide reasonable break times for Plaintiffs and similarly situated employees to express breast milk, in violation of the FLSA.

144.    On information and belief, Defendants, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide reasonable breaks to express breast milk to Plaintiffs and those similarly situated, in violation of the PUMP Act.

145.    Plaintiffs will request that the Court authorize notice to all current and former employees of Defendants who required a space to pump milk from December 29, 2022, to the date the notice is sent to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

146.    The FLSA and the PUMP Act cover all public agency employees of a State, Federal employees (including employees of USPS), a political subdivision of a State, or an interstate government agency. 29 U.S.C. § 203(s)(1)(C).

147.    Defendants violated Plaintiffs' and the FLSA Collective's rights under the PUMP Act by failing to provide reasonable break times to express breast milk.

148.    Defendants violated Plaintiffs' and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

149.    Defendants are liable to Plaintiffs and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

**SECOND COUNT**

**Violation of the FLSA and PUMP Act**
**[29 U.S.C. § 218d(a)(2)]**
**(Brought on Behalf of Plaintiffs and the FLSA Collective)**

150.    Each of paragraphs 1 through 138 is incorporated by reference as though fully set forth herein.

151.    Plaintiffs and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

152.    The FLSA, at 29 U.S.C. § 218d(a)(2), states that an "employer shall provide: . . . (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

153.    In violation of the PUMP Act, Defendants, throughout the relevant period, failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

154.    Defendants, through supervisors and management employees, failed to provide a "functional" space within which Plaintiffs and similarly situated employees could express breast milk without the worry of being intruded upon, in violation of the FLSA.

155.    On information and belief, Defendants, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide sufficient lactation support to Plaintiffs and those similarly situated, in violation of the PUMP Act.

156.    Plaintiffs will request that the Court authorize notice to all current and former employees of Defendants who required a space to pump milk from December 29, 2022, to the date the notice is sent to inform them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

157.    The FLSA and the PUMP Act cover all public agency employees of a State, a political subdivision of a State, or an interstate government agency. 29 U.S.C. § 203(s)(1)(C).

158.    Defendants violated Plaintiffs' and the FLSA Collective's rights under the PUMP Act by failing to provide an appropriate clean and safe place that is free from intrusion within which to pump breast milk.

159.    Defendants violated Plaintiffs' and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

160.    Defendants are liable to Plaintiffs and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs pray for the following relief on behalf of themselves and the FLSA Collective:

A.    An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.    An Order from this Court ordering Defendants to post a copy of an agreed-upon and court-approved notice to the intranet maintained by USPS for Postal Service employees, along with a physical notice posted in a common space visible to employees at each post office;

C.    An Order from this Court ordering Defendants to provide the undersigned with the names, addresses, email addresses, and telephone numbers of all female employees who, within the current calendar year, have taken leave from work under the Family Medical Leave Act or who have added a new dependent to their insurance benefits provided via the Federal Employees Health Benefits Program ("FEHB");

D.    An Order from this Court ordering Defendants to send, via mail and email, a copy of the agreed-upon and court-approved notice to all female employees who, within the current calendar year, have taken leave from work under the Family Medical Leave Act or who have added a new dependent to their insurance benefits provided via FEHB;

E.    Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA;

F.    Adjudicating and declaring that Defendants violated the FLSA by failing to provide reasonable break time and private, sanitary lactation space for nursing mothers;

G.    Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violations of the FLSA;

H.    Awarding Plaintiffs and the FLSA Collective legal and equitable damages in an amount consistent with the FLSA;

I.    Awarding Plaintiffs reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA;

J.    Awarding pre-and post-judgment interest and court costs as further allowed by law;

K.    Granting Plaintiffs and the FLSA Collective leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

L.    Awarding any further legal or equitable relief the Court deems just, equitable, and/or appropriate.

**SIRI & GLIMSTAD LLP**

/s/   *Aaron Siri*
Aaron Siri (D.C. Bar No.: NY0537)
Mason A. Barney (*pro hac vice* to be filed)
Oren Faircloth (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: ofaircloth@sirillp.com

*Attorneys for Plaintiffs and the FLSA Collective*

**CONSENT TO JOINT COLLECTIVE ACTION**
**FAIR LABOR STANDARDS ACT OF 1938**
**29 U.S.C. § 216(b)**

I hereby consent to be a party plaintiff in a lawsuit under the Fair Labor Standards Act

concerning my employment with the United States Postal Service to recover all available relief

under 29 U.S.C. § 216(b).


Christy Masseur
PRINTED NAME

*Christy G Masseur*
Christy Dodson-Brown (Jul 18, 2023 15:07 CDT)
SIGNATURE

1298 Highway 613 Lucedale, Mississippi 39452
ADDRESS

(601) 770-0110
TELEPHONE NUMBER

christygean2011@gmail.com
EMAIL ADDRESS

**CONSENT TO JOINT COLLECTIVE ACTION**
**FAIR LABOR STANDARDS ACT OF 1938**
**29 U.S.C. § 216(b)**

I hereby consent to be a party plaintiff in a lawsuit under the Fair Labor Standards Act concerning my employment with the United States Postal Service to recover all available relief under 29 U.S.C. § 216(b).

Taylor Allen
PRINTED NAME

SIGNATURE

3924 S. Cherry Street, Pine Bluff, AR 71603
ADDRESS

(870) 517-8135
TELEPHONE NUMBER

taylorallen1995@yahoo.com
EMAIL ADDRESS

## CONSENT TO JOIN COLLECTIVE ACTION
### FAIR LABOR STANDARDS ACT OF 1938
### 29 U.S.C. § 216(b)

I hereby consent to be a party plaintiff in a lawsuit under the Fair Labor Standards Act concerning my employment with the United States Postal Service to recover all available relief under 29 U.S.C. § 216(b).

Melissa George
PRINTED NAME

*Melissa George*
Melissa George (Jun 21, 2023 11:20 CDT)
SIGNATURE

49292 County 3. BEMIDJI MN 56601
ADDRESS

(701) 441-4445
TELEPHONE NUMBER

melissageorge931207@gmail.com
EMAIL ADDRESS