**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTY G. MASSEUR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Civil Action No. 23-2129 (RCL) |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Plaintiffs Christy G. Masseur, Taylor Allen, and Melissa M. George, by and through their attorneys, respectfully move this Court, pursuant to Federal Rules of Civil Procedure 33, 34, and 37, for an order compelling Defendant United States Postal Service to provide full and complete responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents that were served on Defendant's counsel on December 12, 2023.

In support of this Motion, Plaintiffs rely upon the accompanying Memorandum of Law, Declaration of Oren Faircloth, Esq. and the exhibits annexed thereto, and proposed Order.

Date: March 28, 2024

*/s/Oren Faircloth*
Oren Faircloth (*pro hac vice)*

*/s/Aaron Siri*
Aaron Siri (DC Bar No. NY0537)
Lisa R. Considine (*pro hac vice*)
SIRI & GLIMSTAD LLP

745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: aaron@sirillp.com
E: lconsidine@sirillp.com

*Attorneys for Plaintiffs and the FLSA Collective*

**CERTIFICATE OF SERVICE**

I, Oren Faircloth, do hereby certify that on March 28, 2024, the forgoing "Plaintiffs' Motion to Compel Discovery" was served on counsel of record via the Court's ECF system.

Dated: March 28, 2024

*/s/ Oren Faircloth*
Oren Faircloth

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTY G. MASSEUR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Civil Action No. 23-2129 (RCL) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEFENDANT USPS TO PRODUCE DOCUMENTS AND RESPOND TO INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs Christy G. Masseur, Taylor Allen, and Melissa M. George bring this motion to compel Defendant United States Postal Service ("USPS") to produce documents and materials responsive to their discovery requests and respond to interrogatories.

## I. INTRODUCTION

Defendant generally objects to producing the materials Plaintiffs seek in Requests for Production Nos. 1 and 3–9 on the basis that Plaintiffs' requests exceed the scope of discovery set forth by this Court in its December 1, 2023 Order (ECF No. 33). *See* Defendant USPS's Responses and Objections to Plaintiffs' First Request for Production of Documents, attached as Exhibit C to the Declaration of Oren Faircloth in Support of Plaintiffs' Motion to Compel ("Faircloth Decl."); USPS's Responses and Objections to Plaintiffs' First Set of Interrogatories, attached as Exhibit D to the Faircloth Decl.; USPS's Supplemental Objections and Responses to First Request for Production, attached as Exhibit E. Defendant is wrong. This Court's order does not limit discovery in the manner Defendant argues it does. USPS is required to produce responsive materials (a) that

relate to Plaintiffs' defenses against USPS's motion for summary judgment based on 29 U.S.C. § 218d(g) and (b) that could impact the scope of the collective Plaintiffs will seek to conditionally certify. USPS cannot hide behind this Court's order and hamstring Plaintiffs' summary judgment defenses and efforts for conditional certification. If the documents Plaintiffs seek are likely to support either, Plaintiffs are entitled to them.

USPS refuses to provide complete responses to Plaintiffs' Requests for Production Nos. 1 and 3–9, which were served on December 12, 2023. *See* Plaintiffs' First Request for Production of Documents, Exhibit A to Faircloth Decl., filed herewith. Plaintiffs seek documents that show, *inter alia*, the development of USPS's lactation accommodation policies, including the communications surrounding those policies, the enforcement of those policies, and documents related to employee requests for lactation accommodation. These documents are of critical importance to Plaintiffs because they provide information needed to (a) respond to Defendant's anticipated motion for summary judgment and (b) support their motion for conditional certification by shedding light on the scope of the potential collective and the systemic nature of this issue within USPS.

USPS asserts that because discovery is limited at this time to issues pertaining to Defendant's motion for summary judgment and Plaintiffs' motion for collective certification, USPS does not have to search for and produce electronically stored information ("ESI") during this Phase I of discovery. USPS's position in this regard is wrong and grossly misaligned with Fed. R. Civ. P. 26. Nothing in this Court's order or the parties' joint statement wholly exempts ESI from any stage of discovery. Plaintiffs are entitled to ESI that is responsive to Plaintiffs' discovery demands.

Additionally, USPS failed to provide complete responses to Plaintiffs' Amended Interrogatories Nos. 6 and 7. *See* Plaintiffs' First Set of Interrogatories and Plaintiffs' January 31, 2024, Discovery Letter ("Faircloth Discovery Letter"), Exhibits B and F to Faircloth Decl. In these interrogatories, Plaintiffs requested the number of employees that submitted administrative leave forms on the bases of "pregnancy" or the "birth of a child." These documents will reveal significant information supporting Plaintiffs' positions on the scope of the collective in support of their anticipated motion for conditional certification.

Plaintiffs respectfully request the Court order USPS to produce all materials that are responsive to Requests for Production No. 1 and 3–9 and Amended Interrogatories Nos. 6 and 7.

## II. BACKGROUND

This case involves claims that USPS denied Plaintiffs and similarly situated employees their rights under the Providing Urgent Maternal Protections Act, 29 U.S.C. § 218d (the "PUMP Act"). The PUMP Act obligates employers to provide (a) reasonable break times "as needed" and (b) a private, secure, non-bathroom place for nursing employees to pump breast milk at work. 29 U.S.C. § 218d. Plaintiffs work or worked for USPS as mail carriers and clerks. Plaintiffs' Complaint, ECF No. 1 ("Compl."), ¶¶ 91, 101, 113. On July 21, 2023, Plaintiffs filed their Complaint alleging USPS violated the Fair Labor Standards Act ("FLSA") and both the reasonable time provision and the private space provision under the PUMP Act. *See id.*, ¶¶ 139–160. Plaintiffs state they were forced to pump breast milk hastily in open, unsanitary break rooms and in their mail trucks because USPS failed to enact or institute an adequate lactation accommodation policy. *See id., generally*. They allege that USPS — an organization that employs more than 200,000 women — operated without an adequate policy on lactation accommodations since 2010 despite

federal guidance ordering otherwise. *See id.*, ¶¶ 1–2, 130. On October 25, 2023, Defendant filed its Answer.

On November 28, 2023, the parties, by and through their respective counsel, met and conferred and submitted a joint statement (ECF No. 32 "Joint Statement"). In the Joint Statement, Defendant stated its position that Plaintiffs' claims are barred by 29 U.S.C. § 218d(g)(1) for failing to provide notice to USPS to allow it ten days to provide a space that complies with the requirements of the PUMP Act.[1] Defendant also proposed that discovery be bifurcated with Phase I preceding the filing of Plaintiffs' motion for conditional certification and Defendant's motion for summary judgment and. Depending on the outcome of those motions, Phase II would allow the parties to engage in full blown discovery. The parties agreed that they would exchange limited discovery requests on "(1) the scope and/or identity of the proposed collective; and (2) Plaintiffs' compliance with 29 U.S.C. § 218d(g)(1), or lack thereof." ECF No. 32 at 7. The Court adopted Defendant's proposal for bifurcated discovery (ECF No. 33), as well as the parties' joint motion for a protective order (ECF No. 35).

Following an exchange of discovery demands on December 12, 2023, Plaintiffs identified significant deficiencies in Defendant's responses, prompting a letter detailing the deficiencies in USPS's production and responses and challenging USPS's objections. *Id.*, *see* Faircloth Discovery Letter. Subsequently, on February 5, 2024, the parties met and conferred and agreed to supplement their discovery responses regarding outstanding discovery issues. Faircloth Decl., ¶ 9. The parties also jointly requested that the Court stay the briefing deadlines for the conditional certification and

[1] Notably, there is an exception to § 218d(g)'s notice requirement if "the employer has indicated that the employer has no intention of providing" a compliant space. 29 U.S.C. § 218d(g)(2)(B).

summary judgment motions and to file a joint status report on March 29, 2024. ECF No. 36 at 2. This Court granted the Parties' request for a stay on February 8, 2024. ECF No. 37.

On March 1, 2024, USPS supplemented its production with an additional 14 pages of documents. Faircloth Decl., ¶ 12. The parties had a subsequent meet-and-confer call on March 7, 2024 to address Defendant's outstanding discovery. During that call, Defendant maintained that ESI discovery was not merited at this "phase" of discovery, and that discovery materials such as complaints, grievances, or lactation accommodation requests are handled at the local level and as such would not be produced at this time. *Id.*

On March 27, 2024, USPS supplemented its production with an additional 165 pages of documents. The documents produced by USPS in its March 27, 2024 supplemental production include policies and materials purporting to demonstrate the dissemination of a lactation accommodation policy throughout USPS. Significantly, however, these materials are limited to those that postdate the filing of Plaintiffs' lawsuit. Plaintiffs continue to seek documents that *predate* the lawsuit and pertain to USPS's lactation accommodation policy in effect at that time. Faircloth Decl., ¶ 14.

## III. ARGUMENT

### A. Legal Standard.

Compliance with the rules of discovery depends on good faith. Plaintiffs are entitled, pursuant to Rule 26 of Federal Rules of Civil Procedure, to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." As provided by the Advisory Committee Notes, Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Indeed, Rule 26 "is intended to impose an 'affirmative duty' on counsel to behave

responsibly during discovery." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008). A party bringing a motion to compel "bears the initial burden of "explaining how the requested information is relevant." *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad*, 322 F.R.D. 1, 6 (D.D.C. 2017). However, if the movant satisfies this burden, "the burden then shifts to the non-movant "to explain why discovery should not be permitted.'" *Id.* (citation omitted).

**B. USPS Must Produce Drafts And Communications Relevant To Plaintiffs' Defense To USPS's Motion For Summary Judgment Under § 218d(g) And Relevant To Plaintiffs' Motion For Conditional Certification.**

As discussed, Plaintiffs have a compelling need for the materials sought in Request for Production No. 1. Not only are these materials relevant to Plaintiffs' defense against USPS's motion for summary judgment and to Plaintiffs' conditional certification briefing, but the materials sought also are proportional to the needs of the case.

**1. Plaintiffs' Request For Production No. 1 ("RFP No. 1")**

> **Request No. 1**: All versions, including any drafts, of the July 13, 2023 Memorandum entitled "Postal Service Policy on Accommodation of Pregnant and Nursing Mothers" as described in the parties' Joint Report Pursuant to Local Civil Rule 16.3(d) (ECF No. 32) and all documents related to its dissemination to USPS offices.

The information requested in RFP No. 1 is directly relevant to the upcoming motions for conditional certification and summary judgment. Understanding the timing and development of USPS's lactation accommodation policy and its dissemination will be crucial for determining whether the Plaintiffs' claims are representative of a broader issue and whether the policy itself is sufficient to address the needs of breastfeeding employees nationwide. Drafts, communications, and any conspicuous absence thereof, surrounding these policies, are crucial information because they reveal the extent to which USPS was aware of and had notice that it was not providing statutorily compliant spaces or breaks to its nursing employees. These materials will shed light on

USPS's internal response to its obligations under the PUMP Act and will likely reveal the extent of USPS's knowledge and actions concerning lactation accommodation compliance. *See* 29 U.S.C. § 218d(g). A pattern of inaction or dismissive language within these documents can raise a strong inference of deliberate disregard for the PUMP Act's requirements.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought are protected by attorney-client privilege; (c) the request is overbroad and imposes an undue burden; (d) the documents sought are not relevant; and (e) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33). Additionally, USPS objects on the basis that these documents are (f) protected by the work-product privilege and (g) the deliberative process privilege. *See* Faircloth Decl., Ex. C.

#### a. USPS Points To No Law, Court Rule, Court Order, Or Agreement That Is In Conflict With Plaintiffs' Discovery Demand.

USPS's objection is on weak footing. RFP No. 1 fully aligns with discovery rules, is relevant and proportional, and imposes no undue burden. The memoranda requested directly address core issues — USPS's lactation policies and practices and the implementation thereof. Understanding how the policies were developed and disseminated is crucial to evaluating Defendant's compliance with the PUMP Act. These documents may also reveal an exception to the notice provision if they show USPS never intended to comply with the space requirement, potentially impacting summary judgment arguments. *See* 29 U.S.C. § 218d(g)(2). Therefore, access to these documents is essential for Plaintiffs when opposing a motion for summary judgment.

**b. Plaintiffs Do Not Seek Information Protected By The Attorney-Client Privilege.**

USPS misapplies the attorney-client privilege in its objection to RFP No. 1. This privilege protects legal advice, not general HR policy development. The requested memoranda concern the evolution of USPS's lactation policy over recent years, not confidential legal discussions. These documents likely detail internal discussions and revisions — none of which involve confidential legal advice or strategy. Similarly, dissemination documents reveal implementation personnel, not legal counsel advising on policy creation. These documents likely reveal little more than the names of the USPS employees tasked with carrying out and implementing the finalized policy, not legal counsel who provided advice on the creation of the policy itself. By seeking protection behind the attorney-client privilege, USPS is obstructing Plaintiffs' legitimate efforts to understand USPS's process underlying the development of its lactation policy.

**c. Plaintiffs' Discovery Request Is Limited.**

USPS's objection that RFP No. 1 is overbroad and imposes an undue burden lacks merit. The request directly targets USPS's lactation accommodation policy, which is a core defense against USPS's position that it did not have notice of its violations of the PUMP Act's space requirements. Drafts and dissemination documents are essential to assess how USPS evaluates its legal obligations and implements its policies. They reveal the organization's intent to create a culture that upholds these policies. RFP No. 1 seeks only a limited number of relevant materials: drafts of a single memorandum and dissemination records, which likely consist of a manageable number of emails. Production poses minimal burden on USPS. Because the requested materials are narrowly tailored, directly relevant, and production is minimal, the Court should reject this objection.

**d. Plaintiffs' Discovery Request Is Directly Relevant To The Issues Of Conditional Certification And The Issue Of Notice Under § 218(g).**

Moreover, USPS's relevancy objection is obviously baseless. The Federal Rules mandate production of all discoverable documents within a party's control. *See Walls v. Paulson*, 250 F.R.D. 48, 50 (D.D.C. 2008). Here, the central issue is USPS's lactation accommodation policy and its implementation, and the requested materials directly address this issue. *See La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 171 (D. Del. 1973) ("discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action"). Further, tracking how the policy was communicated within USPS can reveal discrepancies between the written policy and its actual implementation, which is vital to determining if USPS effectively followed its own established. policies.

**e. Plaintiffs' Discovery Request Is Within The Scope Of The Court's December 1, 2023 Order.**

USPS misinterprets the Court's Order on limited discovery. *See* ECF Nos. 32, ¶ 8, and 33. RFP No. 1, seeking drafts of the July 13, 2023, memorandum and dissemination documents directly relates to the topic of Defendant's motion for summary judgment under 29 U.S.C. § 218d(g)(1). Understanding USPS's policy evolution for lactation requests is essential to assess its intention to comply with the PUMP Act and, therefore, whether Plaintiffs were required to notify their employer, as mandated by Section 218d(g)(1). Examining how USPS disseminated the lactation policy helps determine whether Plaintiffs, and other similarly situated employees, were adequately informed of their rights.

Communications regarding the implementation of USPS's lactation policy may reveal if managers or trainers were not properly equipped to deal with lactation requests. Dissemination

records of the policy can reveal how it was communicated to its workforce, which may identify potential disparities in policy awareness among employees. RFP No. 1 includes correspondence from managers and supervisors to their superiors regarding the implementation of USPS's lactation policy. This is directly relevant to defining the scope and identity of the potential collective impacted by USPS's non-compliant practices. RFP No. 1 addresses the issues in this Court's order by targeting specific documents that are critical to understanding the development and evolution of USPS's policy (or lack thereof) and how that policy was communicated, which helps define the scope of those impacted by it. Plaintiffs are entitled to these documents.

**f. Plaintiffs Do Not Seek Information Protected By The Work-Product Privilege.**

USPS's claim of work-product privilege is misplaced. The work-product doctrine protects materials prepared in anticipation of litigation. *Judicial Watch, Inc. v. United States DOJ*, 118 F. Sup. 3d 266, 273 (D.D.C. 2015) ("courts have 'uniformly . . . held [the work product doctrine] to be limited to documents prepared in contemplation of litigation . . . the [work product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" (citations omitted)). The documents Plaintiffs seek pertain to the development and dissemination of USPS's lactation policy, not litigation strategy. The protections of the work-product privilege do not apply to routine policy development or internal communications. Defendant has failed to meet its burden to show that the documents sought were prepared in anticipation of litigation.

Even if a minimal work-product protection applies, Plaintiffs have a compelling and demonstrably substantial need for this information that outweighs any limited privilege. *See In re Vitamins Antitrust Litigation*, No. 99-cv-0197, 2003 U.S. Dist. LEXIS 3038, at *23 (D.D.C. Jan. 24, 2003) ("the work product privilege is not absolute, and a party may obtain fact work product,

such as the documents at issue here, upon the showing of substantial need.”). Therefore, any minimal privilege that may apply should not prevent Plaintiffs from obtaining documents that are essential to their position in upcoming motion practice.

**g. The Deliberative Process Privilege Does Not Apply Here.**

USPS’s assertion of the deliberative process privilege is improper. The deliberative process privilege is not an absolute shield. Courts can grant access to internal government discussions if the need for truth outweighs the need for secrecy. *See In re Sealed Case*, 121 F.3d 729, 737 n. 5 (1997) (“the deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need . . . This characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure.”). Importantly, courts often reject this privilege when the government’s decision-making process itself is the heart of the legal dispute. *E.g. In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424–25 (D.C. Cir. 1998) (“The privilege was fashioned in cases where the governmental decision making process is collateral to the plaintiff's suit. . . If the plaintiff's cause of action is directed at the government’s intent, however, it makes no sense to permit the government to use the privilege as a shield.”). “[T]he privilege disappears altogether when there is any reason to believe government misconduct occurred.” *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997).

While the deliberative process privilege protects an agency’s internal discussions when formulating policy, it cannot be used to shield the very policy itself, especially when it forms the core of the legal challenge. In this case, the adequacy of USPS’s lactation accommodation policy is the central issue in the lawsuit. Denying access to draft memoranda, communications related to the memoranda, and dissemination documents would unfairly prejudice Plaintiffs and hinder their

ability to mount a successful legal challenge to USPS's approach to accommodating its nursing employees. Without access to these materials Plaintiffs cannot fully grasp how the policy was implemented and communicated. Further, the deliberative process privilege cannot be used to create a "black box" around the very policy being challenged. There is simply no alternative source for understanding the evolution of USPS's policy and its dissemination across its offices.

Moreover, the need for transparency in government actions outweighs the limited interest in protecting internal deliberations in this instance. The manner in which the women who deliver the nation's mail are being treated immediately after having a baby is a matter of public concern, and ensuring compliance with the PUMP Act is essential for protecting the rights of nursing mothers in the workplace. In this case, permitting USPS to withhold drafts of the memoranda concerning lactation accommodations, communications related to memoranda, and dissemination documents creates a significant obstacle to the Plaintiffs' understanding of USPS's approach to its employees. If Plaintiffs can prove that USPS failed to enact and implement a clear and actionable policy for responding to lactation accommodation requests, Plaintiffs may be entitled to relief.

Also, in this case, where Plaintiffs allege government misconduct — specifically, USPS's failure to adopt and implement a clear and actionable lactation accommodation policy — the rationale behind the policy is relevant. Withholding drafts of the memorandum and dissemination documents would obstruct Plaintiffs' ability to prove that USPS did not, in fact, create a sufficient policy or effectively communicate it to employees, and the deliberative process privilege cannot be a cloak to conceal potential misconduct. Accordingly, Plaintiffs are entitled to these documents.

In this case, the relative burden of producing responsive materials to RFP No. 1 is minimal compared with the potential impact on the case. USPS has not objected based on the cost of producing these materials and Plaintiffs lack access to this information on their own. Only USPS

has materials related to the policy's development and distribution. Moreover, given that the rights of hundreds, if not thousands, of women are at issue, resolving this dispute is important. Therefore, the Court should order USPS to produce all responsive materials to RFP No. 1.

### C. USPS Must Produce Documents Related To Employee Requests For Accommodation, Employee Complaints Related To Accommodation, And Related Investigations And Training Materials.

In Requests for Production Nos. 3–9, Plaintiffs seek employee requests, complaints, training materials, any internal investigations related to lactation accommodation at USPS, and specifically documents related to the three Plaintiffs. These materials are crucial to support Plaintiffs' claim that USPS failed to enact a clear and comprehensive lactation accommodation policy, which is a systemic issue impacting breastfeeding employees nationwide.

A closer look at employee complaints, internal investigations, and training materials can illuminate whether Plaintiffs' experiences reflect isolated incidents or a nationwide pattern. Documents like employee complaints, internal investigations, and training materials can reveal patterns and practices within the USPS regarding its accommodation (or lack thereof) for nursing employees. Data on the number of employee requests for lactation accommodations and any disciplinary actions related to those requests will help determine the potential size of the collective impacted by USPS's policy deficiencies.

Similarly, training materials and internal communications regarding lactation accommodations will shed light on whether the USPS provides proper guidance to supervisors and employees on lactation rights.[2] These materials can help establish if the alleged shortcomings stem from a lack of clear policies or a failure to implement existing policies effectively. Also, documents

[2] While USPS produced training materials that postdate the filing of Plaintiffs' Complaint, USPS has not produced documents showing training materials that predate the filing of the Complaint. Faircloth Decl., ¶ 14.

related to the three named Plaintiffs can be compared with broader data on employee requests and complaints to assess if they faced similar challenges, which would strengthen the argument that Plaintiffs' experiences are representative of a larger issue.

### 1. Plaintiffs' Request for Production No. 3 ("RFP No. 3")

> **Request No. 3**: Any and all documents relating to employee complaints regarding Lactation Accommodations including, but not limited to, memoranda, emails, correspondence, reports, investigations, proceedings, disciplinary action taken against any USPS employee, or lawsuits against or involving USPS related to Lactation Accommodations.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought are protected by attorney-client privilege; (c) the documents sought to impinge on the privacy interests of USPS's personnel; (d) the request is overbroad and imposes an undue burden; (e) the documents sought are not relevant; (f) the documents sought refer to undefined terms; (g) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33); and (h) the request uses the term "Lactation Accommodation," which is vague and ambiguous. *See* Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that the request (i) seeks documents regarding all USPS employees nationwide, which USPS asserts is beyond the Court's order and seeks information the is not relevant to the case. USPS further objected on the basis that the request (j) sought documents concerning employees whose circumstances were not similar to Plaintiffs and that those documents are not relevant to Plaintiffs' claims.

#### a. USPS Points To No Law, Court Rule, Court Order, Or Agreement That Is In Conflict With Plaintiffs' Discovery Demand.

Again, USPS's objection is on weak footing. RFP No. 3 is relevant, proportional, and aligns with standard discovery practices. It imposes no burdens beyond the scope of the law. These

materials provide crucial insight into the problems with the current and former policies and USPS's implementation of those policies. They are vital documents for a comprehensive evaluation of USPS's compliance with the PUMP Act and its predecessor statutes. The request is tailored to complaints and correspondence related to lactation accommodation, which is the core issue of this lawsuit. Employee complaints and related documents are typical tools used to evaluate a potential systemic issue and gauge employee experiences with prior and existing policies. These types of materials fall squarely within the scope of permissible discovery under the Federal Rules, and access to these documents is essential for Plaintiffs' motion for conditional certification.

**b. Plaintiffs Do Not Seek Documents Protected By The Attorney-Client Privilege.**

USPS's objection that these materials are protected by the attorney-client privilege lacks merit. Plaintiffs seek documents showing individual grievances by employees who were not accommodated by USPS in response to requests for lactation accommodation. Plaintiffs are not seeking communications concerning legal advice from USPS attorneys. Plaintiffs' request focuses on the underlying complaints and grievances related to lactation accommodation, not legal strategy. These documents capture employee experiences and concerns that generally involve human resources, not confidential discussions with legal teams. These documents are essential to understanding the scope and nature of employee concerns regarding USPS's lactation policy to date and whether there have been systemic issues with the policy's implementation. Even if some communications within the requested documents are privileged, the attorney-client privilege cannot not serve as a blanket of protection for USPS.

**c. The Privacy Interests Of Third Parties Are Protected By This Court's December 12, 2023 Stipulated Protective Order.**

As an initial matter, the Court entered a Stipulated Protective Order on December 12, 2023 (ECF No. 35), which protects such material from public disclosure. As such, Defendant's objection on this basis is unfounded. Plaintiffs recognize and respect USPS employee privacy concerns, however, access to documents regarding employee lactation accommodation complaints is vital. These complaints can reveal systemic issues with USPS's lactation accommodation policy, such as inadequacies, communication failures, or inadequate supervisor training. Without this information, identifying potential patterns of PUMP Act non-compliance would be very challenging, hindering Plaintiffs' ability to support their claims and appropriately define the scope of the potential collective.

**d. Defendant Has Not Demonstrated That The Material Sought Is Overbroad Or Imposes An Undue Burden.**

RFP No. 3 is not overbroad. It seeks specific documents directly relevant to the core issue: the adequacy of USPS lactation accommodations. Reviewing employee complaints is standard practice to gauge policy effectiveness, pinpointing areas of confusion, inadequacy, or improper enforcement. These materials are also crucial for Plaintiffs' upcoming motion for conditional certification, as they establish the pervasiveness of the issue. While USPS claims it lacks a digital complaint system that tracks these documents, a good faith effort to locate all responsive materials (regardless of format) has not been demonstrated.

**e. The Material Sought Is Plainly Relevant.**

USPS's objection based on relevancy is wholly inaccurate. RFP No. 3 clearly seeks materials that are relevant because complaints provide crucial evidence of inadequacies with USPS's lactation accommodation policies. These materials can highlight not only the volume and

nature of the complaints within USPS regarding a lack of lactation accommodation but can also be vital in understanding and crafting appropriate relief.

**f. Defendant Points To No "Undefined Terms" That Prevent It From Responding To Discovery.**

USPS has not communicated which undefined terms are preventing it from producing responsive materials to RFP No. 3. However, Plaintiffs posit that the terms in RFP No. 3 are sufficient to convey to a reasonable party which materials are being sought. Plaintiffs defined the term "Lactation Accommodation" in their Requests for Production, as did USPS in its responses and objections. In any event, Plaintiffs are willing to further define any terms that are unclear or are preventing USPS from producing responsive documents.

**g. Plaintiffs' Discovery Request Is Within The Scope Of The Court's December 1, 2023 Order.**

USPS again misinterprets the Court's order on limited discovery. *See* ECF Nos. 32, ¶ 8, and 33. This Court permitted Plaintiffs to seek materials related to the scope of the potential collective and related to Defendant's proposed summary judgment motion. *Id.* RFP No. 3 directly relates to the scope of the potential collective. These materials not only identify members of the potential collective but also reveal the prevalence and nature of employee concerns surrounding USPS's lactation accommodation policy. These materials may help refine the scope of the potential collective by pinpointing groups of employees who faced similar issues to those of Plaintiffs or groups of employees who did not.

USPS improperly attempts to limit discovery by defining which employees are "similarly situated." That limitation is not for USPS to unilaterally determine. Even if these materials relate to employees that are not similarly situated to Plaintiffs, they may demonstrate a systemic disregard for lactation accommodation requests.

**h. The Court's December 1, 2023 Order Contemplates Nationwide Discovery Related To The Scope Of The Collective.**

Likewise, USPS misinterprets the Court's order regarding geographic scope. The order limited Phase I to the proposed collective and notice of non-compliance, issues directly addressed by nationwide lactation complaint data. Withholding such data hinders Plaintiffs' ability to effectively address these issues. Notably, the Court adopted the discovery scope proposed by Defendants (ECF Nos. 32, ¶ 8, and 33), lacking temporal or geographic limitations. Plaintiffs' document requests pertain to all USPS employees because the allegations in Plaintiffs' Complaint challenge USPS's enactment and implementation of a nationwide lactation accommodation policy. While discovery is bifurcated, obtaining relevant nationwide documents upfront avoids the need for future, duplicative efforts to obtain this information.

While Requests for Production three through nine each seek different documents, there may be considerable overlap and an analysis of Defendant's objections and responses to Request for Production No. 3 will be equally applicable to the remaining Requests for Production.

**2. Plaintiffs' Request for Production 4 ("RFP No. 4")**

> **Request No. 4**: Any and all documents relating to training materials, guidelines, policies, employee handbooks, or procedures related to the provision of Lactation Accommodations to employees.

In response to RFP No. 4, USPS produced a July 2023 memorandum of law describing USPS's recently enacted lactation policy, Collective Bargaining Agreements with the major unions, and a "Reasonable Accommodation" requests handbook. Faircloth Decl., ¶ 10. USPS also produced a memorandum dated September 6, 2023 — six weeks after Plaintiffs filed suit — discussing guidance for nursing mothers in the workplace. *Id.*, ¶ 14. Neither the collective bargaining agreements nor the Reasonable Accommodations handbook discuss or even *mention* lactation accommodation. To the extent such materials exist, Plaintiffs are entitled to know

whether USPS had any training or guidance materials related specifically to addressing and responding to requests for lactation accommodation that *predate* the filing of Plaintiffs' Complaint.

Plaintiffs seek documents showing USPS's policies on lactation accommodation during the relevant time period. Training materials and procedures, and who received such materials and when, would help identify which individuals are similarly situated by outlining which individuals at USPS were responsible for addressing requests for lactation accommodation and USPS's guidance and training of those individuals. Further, training materials and internal communications in effect at during the relevant time period can shed light on whether USPS was aware, at that time, of potential issues with their lactation accommodation practices, which directly supports Plaintiffs' defense to USPS's anticipated motion for summary judgment. The volume of materials should be limited and readily identifiable by USPS. Plaintiffs are entitled to these materials.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought are protected by attorney-client and/or work-product privilege; (c) the documents sought are unreasonably cumulative and duplicative and are equally available to Plaintiffs or can be obtained from "some other source;" (d) the request is overbroad and imposes an undue burden; (e) the documents sought are not relevant; (f) the documents sought refer to undefined terms; (g) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33); and (h) the request uses the term "Lactation Accommodation," which is vague and ambiguous. See Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that the request is unduly broad "insofar as [USPS] has hundreds of written rules, guidelines, policies and/or procedures that apply to its employees."

Plaintiffs have addressed the impropriety of USPS's objections in their prior responses and hereby rely on their analysis of prior-raised objections in Sections B.1. and C.1. for objections (a), (b), (d), (e), (f), (g), and (h).

**a. Plaintiffs' RFP No. 4 Is Not Duplicative**

Defendant's duplicative argument is meritless. Defendants seeking to establish a claim that a document request is duplicative must state "specific, articulable facts and not merely speculative or conclusory statements." *Burke v. Air Serv International, Inc.*, No. 07-cv-2335, 2009 U.S. Dist. LEXIS 140406, at *23 (D.D.C. Aug. 11, 2009). Here, Defendant has failed to do so. RFP No. 4 is not duplicative of Request for Production No. 2 ("RFP No. 2") — seeking "[a]ny and all written policies, procedures, and or guidelines relating to Lactation Accommodations for the period January 1, 2009 to the present — because RFP No. 4 seeks a broader range of documents than just written policies or guidelines. The documents sought by RFP No. 4 relate to how the policy was presented to staff and whether there are any potential gaps between USPS's written policy and its actual practice. Further, RFP No. 4 seeks to capture documents showing any relevant changes or iterations concerning the *implementation* of USPS's lactation policy over time.

**b. USPS Must Produce Documents Within Its Control.**

USPS's objection in this regard must be rejected. Rule 34 clearly establishes that Plaintiffs are entitled to seek materials "that are in the possession, custody, or control of the party upon whom the request was served." Indeed, "courts have rejected as illegitimate any objection based on the supposition that the other party already has what it is demanding." *McNamara v. Picken*, No. 11-cv-1051, 2013 U.S. Dist. LEXIS 78477, at *8 (D.D.C. June 4, 2013). Here, the burden of locating and producing relevant materials rests with USPS. If USPS can readily access these materials, it must produce them. Claiming Plaintiffs can find these materials elsewhere improperly shifts USPS's burden to Plaintiffs, which is not permissible under the Federal Rules. USPS cannot

shirk its burden to produce materials over which it has control by claiming they are available elsewhere.

**c. Plaintiffs RFP No. 4 Is Specifically Tailored to Lactation Accommodation.**

USPS's objection is unfounded. RFP No. 4 narrowly focuses on written policies and guidelines pertaining to *lactation accommodation*, not all USPS policies. This is a specific and defined topic that directly relates to the core issue of the case. If USPS has hundreds of written rules and guidelines, it must review them and produce those documents that are relevant and responsive to Plaintiffs' requests.

**3. Plaintiffs' Request for Production 5 ("RFP No. 5")**

> **Request No. 5**: Any and all documents relating to Lactation Accommodation requests received by USPS, and all responses thereto.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought are protected by attorney-client and/or work-product privilege; (c) the documents sought to impinge on the privacy interests of USPS's personnel; (d) the request is overbroad and imposes an undue burden; (e) the documents sought are not relevant; (f) the documents sought refer to undefined terms; (g) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33); and (h) the request uses the term "Lactation Accommodation," which is vague and ambiguous. See Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that the request (i) seeks documents regarding all USPS employees nationwide, which USPS asserts is beyond the Court's order and seeks information the is not relevant to the case. USPS further objected on the basis that the request (j) sought documents concerning employees whose circumstances were not similar to Plaintiffs and that those documents are not relevant to Plaintiffs' claims.

Plaintiffs have addressed the impropriety of USPS's objections in their prior responses and hereby rely on their analyses of prior-raised objections in Sections B.1. and C.1. for objections (a) – (i).

USPS's response to RFP No. 5 falls short. While producing a single doctor's note from Plaintiff Masseur as well as several emails between Plaintiff Masseur and USPS's local nurse, USPS refused to provide any other responsive documents on the basis that it would only respond on behalf of the named Plaintiffs. Faircloth Decl., ¶ 11. The FLSA empowers employees to bring collective actions "for and on behalf of . . . themselves and other employees similarly situated[,]" which allows employees with similar claims to join a single lawsuit. Discovery in collective actions plays a critical role in defining the scope of the collective itself. Through discovery, Plaintiffs can gather information demonstrating the nature and scope of the alleged violations.

In this case, information pertaining to USPS's lack of a lactation policy prior to January 2024 and its nationwide impact on its nursing employees. This information is vital to determine the extent of the impact on a broader group of USPS employees affected by the lack of a policy on lactation accommodation. USPS's unilateral decision to limit discovery responses solely to the named Plaintiffs is improper because such limitations (a) obstruct the identification of other employees who have likely experienced similar hardships to Plaintiffs and (b) hinder Plaintiffs' efforts to establish a nationwide pattern or practice of violation. Both elements are essential for the success of Plaintiffs' motion for conditional certification. Discovery in Phase I is designed to shed light on these issues. Accordingly, limiting responsive materials to the named Plaintiffs is improper, contrary to the Court's Order, and hinders the overall objective of discovery.

#### 4. Plaintiffs' Request for Production 6 ("RFP No. 6")

> **Request No. 6**: Any and all documents concerning the physical space to be provided to employees to pump breast milk at work.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought to impinge on the privacy interests of USPS's personnel; (c) the request is overbroad and imposes an undue burden; (d) the documents sought are not relevant; (e) the documents sought refer to undefined terms; (f) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33); and (g) the request uses the term "Lactation Accommodation," which is vague and ambiguous. See Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that the request (h) seeks documents regarding all USPS employees nationwide, which USPS asserts is beyond the Court's order and seeks information the is not relevant to the case. USPS further objected on the basis that the request (i) sought documents concerning employees whose circumstances were not similar to Plaintiffs and that those documents are not relevant to Plaintiffs' claims.

Plaintiffs have addressed the impropriety of USPS's objections in their prior responses and hereby rely on their analyses of prior-raised objections in Sections B.1. and C.1. for objections (a) – (i).

Plaintiffs challenge the completeness of USPS's response to RFP No. 6. While USPS produced an email exchange referencing how a lactation space should be provided to Ms. Masseur as well as a memorandum on how to create a motherhood room, the materials fail to address broader guidelines or instructions for how these policies were supposed to be implemented for all employees. As discussed in Section C.3. above, regarding the impropriety of USPS providing responsive material only for the named Plaintiffs, this information is related to the issue of collective certification and is essential for Plaintiffs to develop a comprehensive defense against a potential summary judgment motion based on Section 218d(g).

**5. Plaintiffs' Request for Production 7 ("RFP No. 7")**

> **Request No. 7**: Any and all documents regarding policies, practices, and/or guidelines concerning employee lactation breaks.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought to impinge on the privacy interests of USPS's personnel; (c) the request is overbroad and imposes an undue burden; (d) the documents sought are not relevant; (e) the documents sought refer to undefined terms; (f) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33); and (g) the request uses the term "Lactation Accommodation," which is vague and ambiguous. See Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that (h) the request is unduly broad "insofar as [USPS] has hundreds of written rules, guidelines, policies and/or procedures that apply to its employees." Like RFP Nos. 5 and 6, USPS's response was limited to the named Plaintiffs.

Plaintiffs have addressed the impropriety of USPS's objections in their prior responses and hereby rely on their analyses of prior-raised objections in Sections B.1. and C.1. for objections (a) – (h). Further, as discussed in Section C.3. above, regarding the impropriety of USPS providing responsive material only for the named Plaintiffs, the information sought is related to the issue of collective certification and is essential for Plaintiffs to develop a comprehensive defense against a potential summary judgment motion based on Section 218d(g).

In the January 31, 2024 Faircloth Discovery Letter, Plaintiffs narrowed their request to RFP No. 7 from "breaks" to specifically focus on "lactation breaks." *See* Ex. F. Although USPS produced its collective bargaining agreements ("CBAs"), these documents fall short. While CBAs outline general break time approaches, they lack details crucial to reasonable pumping accommodations. They set minimum break standards but fail to address how supervisors and

managers handle requests for additional pumping time. Additionally, CBAs offer no guidance on break scheduling or coverage for nursing employees. To address these gaps, Plaintiffs request human resource policies, internal communication on lactation breaks, and training materials on implementing such requests for the relevant time period alleged in Plaintiffs' Complaint.

**6. Plaintiffs' Request for Production 8 ("RFP No. 8")**

> **Request No. 8**: Any and all documents concerning internal audits or investigations of USPS branch locations related to Lactation Accommodations.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought are protected by attorney-client and/or work-product privilege; (c) the documents sought to impinge on the privacy interests of USPS's personnel; (d) the request is overbroad and imposes an undue burden; (e) the documents sought are not relevant; (f) the documents sought refer to undefined terms; (g) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33); and (h) the request uses the term "Lactation Accommodation," which is vague and ambiguous. See Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that the request (i) seeks documents regarding all USPS employees nationwide, which USPS asserts is beyond the Court's order and seeks information the is not relevant to the case. USPS further objected on the basis that the request (j) sought documents concerning employees whose circumstances were not similar to Plaintiffs and that those documents are not relevant to Plaintiffs' claims.

Plaintiffs have addressed the impropriety of USPS's objections in their prior responses and hereby rely on their analyses of prior-raised objections in Sections B.1. and C.1. for objections (a) – (j). Further, as discussed in Section C.3. above, regarding the impropriety of USPS providing responsive material only for the named Plaintiffs, the information sought is related to the issue of

collective certification and is essential for Plaintiffs to develop a comprehensive defense against a potential summary judgment motion based on Section 218d(g).

In response to RFP No. 8, USPS qualified its response by stating that it limited its response to "Plaintiffs Christy Masseur, Taylor Allen, and Melissa George during the period 2021 to the present." USPS's limited search for materials responsive to RFP No. 8, focusing only on three named Plaintiffs, is inadequate. While it claims that "no responsive documents" exist, a broader, organization-wide search is necessary. The materials are relevant to the case and USPS should be required to conduct a full search to assess its compliance with its own accommodation policies.

**7. Plaintiffs' Request for Production 9 ("RFP No. 9")**

> **Request No. 9**: Any and all documents relating to Plaintiff Christy G. Masseur, Plaintiff Allen, and Plaintiff Melissa George, including but not limited to emails, correspondence, employee personnel files, disciplinary histories, Family and Medical Leave Act NALC Forms, and PS Form 3971.

USPS asserted several general objections to this request, including: (a) the request sought to impose an obligation that conflicts with existing law, court rules, court orders, or party agreements; (b) the documents sought are protected by attorney-client and/or work-product privilege; (c) the documents sought are unreasonably cumulative and duplicative and are equally available to Plaintiffs or can be obtained from "some other source;" (d) the request is overbroad and imposes an undue burden; (e) the documents sought are not relevant; (f) the documents sought are equally available to Plaintiffs; (g) the documents sought refer to undefined terms; and (h) the documents sought are beyond the scope of discovery under this Court's order (ECF No. 33). See Faircloth Decl., Ex. C. Additionally, USPS objects on the basis that (i) the request calls for the production of ESI and "any ESI search is not warranted in the initial phase of discovery."

Plaintiffs have addressed the impropriety of USPS's objections in their prior responses and hereby rely on their analyses of prior-raised objections in Sections B.1. and C.1. for objections (a) – (h).

USPS's response to RFP No. 9 also falls short. While Defendant produced personnel files for the three Plaintiffs, USPS produced only a handful or duplicative emails concerning Ms. Masseur. USPS's objection cites no authority for the proposition that "any ESI search is not warranted" during initial discovery, especially given the bifurcated nature of this case. This stance, further confirmed during meet-and-confers, suggests a blanket refusal to produce electronic communications crucial to Plaintiffs' case.[3]

USPS must search for and produce responsive ESI and Plaintiffs seek an order compelling USPS to produce all responsive ESI relevant to their discovery requests throughout the relevant time period. Federal Rule 34(a) mandates the production of relevant ESI, and the potential for significant electronic communications related to Plaintiffs' claims cannot be ignored. Defendant has objected to producing any ESI in response to Plaintiffs' requests on the basis that it is not proportional to the needs of the case. Ex. C at 11. However, in today's digital age, most business communication occurs electronically and refusing to provide ESI is untenable in the modern digital age. Emails and internal documents are routinely stored electronically and constitute the primary record of communication and decision-making. Therefore, ESI is an essential source of information in all litigation and this case is no exception.

[3] On March 11 and 20, 2024, counsel for USPS communicated that USPS had searched the emails of several custodians, including the three named Plaintiffs and several supervisors and managers. Faircloth Decl., ¶ 12. USPS's supplemental production dated March 27, 2024, includes additional ESI showing policies and the dissemination, but the production is limited to those materials generated *after* Plaintiffs Complaint was filed. *Id.*, ¶ 14. Plaintiffs seek these materials, to the extent they exist, for the period requested (December 1, 2021, unless otherwise indicated in specific discovery demands).

The potential for a significant amount of ESI related to Plaintiffs' claims is high. Communications concerning lactation accommodation policies, employee complaints, and training materials are likely to be found in electronic form and denying Plaintiffs access to this information would create an unfair advantage for the USPS. While USPS asserts producing ESI is not proportional to the needs of the case, it has not provided estimates regarding the cost or burden of conducting a comprehensive ESI search. Without this information, it is impossible to assess the proportionality of an ESI search. Bifurcating discovery does not absolve USPS of its obligation to comply with discovery rules, including ESI production. Here, Plaintiffs have clearly established the need for ESI based on the pervasiveness of electronic communication and the potential for relevant materials. Denying Plaintiffs access to relevant ESI would unfairly advantage USPS and hinder their ability to effectively pursue their case. Accordingly, Plaintiffs respectfully request that this Court compel the USPS to conduct a comprehensive search for the applicable limitations period and produce all responsive ESI relevant to their discovery requests.

**D. USPS Has Failed To Respond to Plaintiffs' Amended Interrogatories Numbers Six And Seven.**

**1. Plaintiffs' Amended Interrogatories No. 6 and 7**

> **Interrogatory No. 6**: Identify the total number of employees of USPS that submitted a Family and Medical Leave Act NALC Form 1 from December 1, 2021, through the present date where "Pregnancy" is selected in response to Question No. 1 for the geographic regions of the District of Columbia, Virginia, and Pennsylvania.

> **Interrogatory No. 7**: Identify the total number of employees of USPS that submitted a Family and Medical Leave Act NALC Form 6 from December 1, 2021, through the date of the search for the geographic regions of the District of Columbia, Virginia, and Pennsylvania.

Following the parties' meet-and-confer on January 31, 2024, Plaintiffs narrowed their discovery requests on the number of USPS employees who filed leave forms, focusing on a specific timeframe (December 1, 2021 – present) and geographic region (D.C., Virginia, Pennsylvania) to identify employees potentially impacted by USPS's deficient lactation policy. Despite this concession, USPS failed to produce any responsive documents. Defendant has claimed an inability to search relevant forms, asserting that a manual review of such forms would be too burdensome. Defendant has failed, however, to set forth any information pertaining to the time or expense that would be required to conduct such a search.

USPS's failure to disclose even the number of NALC Forms 1 and 6 filed undermines discovery and unfairly restricts Plaintiffs' ability to define the scope of the potential collective. This information directly relates to Plaintiffs' motion for conditional certification, as the number of employees seeking pregnancy leave in D.C., Virginia, and Pennsylvania provides boundaries for determining how many women may have been impacted by USPS's deficient lactation accommodation policy. USPS has a legal obligation to make a good faith effort to locate responsive documents, which they have neglected to do.

USPS's claim that the NALC forms are not searchable by reason (i.e., "pregnancy" or "birth or a child") does not excuse non-production. Plaintiffs should not bear the burden of USPS's inadequate record-keeping. *See Malzberg v. New York University*, No. 19-cv-10048, 2020 U.S. Dist. LEXIS 116678, at *12 (S.D.N.Y. July 2, 2020) ("to the extent that Defendant's burden is a function of its own record-keeping, that factor that should not prejudice Plaintiff's ability to obtain clearly relevant information" citing similar holdings).

Furthermore, there are available third-party solutions that can facilitate the search. While NALC Form 6 may not pinpoint which employees were breastfeeding, it offers valuable insights

into the potential number of women who were impacted. Discovery cannot be obstructed by claims of over-inclusiveness; otherwise, it would grind to a halt in most cases. Plaintiffs request an order from this Court instructing USPS to identify the number of employees who submitted these forms within the applicable time period.

## IV. CONCLUSION

USPS's current approach to discovery is preventing Plaintiffs from obtaining documents necessary to prepare their defense to USPS's anticipated summary judgment motion and Plaintiffs' motion for conditional certification. For all the foregoing reasons, Plaintiffs respectfully request that the Court order USPS to produce document and materials responsive to their discovery requests.

Dated: March 28, 2024

Respectfully submitted,

*/s/Oren Faircloth*
Oren Faircloth (*pro hac vice)*

*/s/Aaron Siri*
Aaron Siri (DC Bar No. NY0537)
Lisa R. Considine (*pro hac vice*)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: aaron@sirillp.com
E: lconsidine@sirillp.com

*Attorneys for Plaintiffs and the FLSA Collective*