# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTY G. MASSEUR, et al.,

Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,

Defendant.

Civil Action No. 23-2129 (RCL)

**DEFENDANT'S OBJECTIONS AND RESPONSES TO**
**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendant, United States Postal Service ("Postal Service" or "Defendant"), by and through undersigned counsel, hereby objects and responds to the Plaintiffs' First Set of Interrogatories.

Defendant's responses to Plaintiffs' interrogatories and requests do not constitute a waiver of any objections that Defendant may have as to admissibility, authenticity, or relevance of any documents or information provided. Defendant reserves all objections regarding the relevance, materiality, admissibility, privilege, or competency of all documents and information provided in response to these interrogatories and requests as evidence in any later proceeding or trial of this action.

Where the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Defendant's business records, and if the burden of deriving or ascertaining the answer is substantially the same for the parties, Defendant will specify the records that must be reviewed and will produce or make them available to Plaintiffs as set forth in Federal Rule of Civil Procedure 33(d).

**GENERAL OBJECTIONS**

With respect to the Interrogatories, Requests for Admissions, and Request for Production of Documents propounded by Plaintiffs, Defendant asserts the following general objections:

1. Defendant objects to the interrogatories and requests, to include Plaintiffs' Instructions and Definitions, to the extent they seek to impose any obligations greater than or in conflict with those established by law, the rules of this Court, the Federal Rules of Civil Procedure, and/or orders entered by the Court or agreed to by the parties in this case.

2. Defendant objects to the interrogatories and requests to the extent they call for information that is outside of Defendant's knowledge, custody, possession, or control, or that is a matter of public record.

3. Defendant objects to the interrogatories and requests insofar as they seek disclosure of information covered by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity (collectively, "Privileged Information"). All interrogatories and requests have been read specifically to exclude any such information. Any inadvertent production of Privileged Information shall not be deemed a waiver of the applicable privilege or this objection.

4. Defendant objects to the interrogatories and requests to the extent they seek the disclosure of material impinging on the privacy interests of Defendant's personnel.

5. Defendant objects to the interrogatories and requests to the extent they seek information that is unreasonably cumulative or duplicative, is equally available to Plaintiffs, including in documents previously produced and information provided by Defendant to Plaintiffs, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

6. Defendant objects to the interrogatories and requests on the grounds of overbreadth and undue burden and to the extent they seek information that is not obtainable through a reasonably diligent search by Defendant.

7. Defendant objects to the interrogatories and requests to the extent they seek information that is not relevant to the subject matter of the pending action, exceeds the scope of permissible discovery, or is not proportional to the needs of the case.

8. Defendant objects to the interrogatories and requests to the extent they seek to obtain from Defendant information equally or more readily available to Plaintiff.

9. Defendant objects to the interrogatories and requests to the extent they refer to undefined terms or terms to which the parties have attributed different and contrary meanings over time.

10. Defendant objects to the interrogatories and requests to the extent that they exceed the scope of permissible discovery, as limited by the Court's Scheduling Order (ECF No. 33). The Court has bifurcated and limited discovery in this action.

11. Defendant objects to each and every use by Plaintiffs of the term "Lactation Accommodations" in the interrogatories and requests, as the term is vague, ambiguous, legally conclusory, compound, and phrased in a fashion that is not readily comprehensible or subject to a coherent response by Postal Service, unfairly leaving the Postal Service to speculate as to the intended meaning of the term or the information sought by each interrogatory and/or request employing the term. For purposes of its responses to Plaintiffs' interrogatories and requests, the Postal Service interprets "Lactation Accommodations" to mean those reasonable accommodations that may be available to employees under the PUMP Act.

Without waiving or prejudicing the foregoing objections, Defendant reserves its right to supplement or amend the responses to any of the interrogatories or requests should it become aware of additional information or documents.

**ANSWERS TO INTERROGATORIES**

**1. Set forth in detail and with particularity the method by which USPS circulated its memorandum entitled "Postal Service Policy on Accommodation of Pregnant and Nursing Mothers," including the departments and/or personnel to whom it was disseminated.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 9 ('USPS" and "memorandum"), and 10. The Postal Service interprets this interrogatory as seeking information regarding the Director of Labor's circulation of the final memorandum.

Subject to and without waiving the foregoing and general objections above, the Postal Service states that the memorandum dated July 13, 2023 and entitled "Postal Service Policy on Accommodation of Pregnant and Nursing Mothers" was sent via e-mail by Director of Labor, Headquarters, Thomas Blum, to Headquarters officers, with copies to Senior Director, National Human Resources, Joseph Bruce; former Senior Director, Field Human Resource Operations, Gail Hendrix; Manager, Human Resources Shared Services Center, Desiree Manning; Director of Workforce Planning, Insights and Analytics, Post Office Operations, John Prokity; Senior Director of Operational Safety & Health, Linda DiCarlo; Policy and Program Analyst, Joey Scalzo; and Employment Policy Specialist, Nashelle Dukes. It is Postal practice that policy memoranda be distributed to Headquarters officers, who are then responsible for disseminating to their reports, and so on, to ensure information cascades down to, and reaches, all supervisors and managers.

**2. Set forth in detail and with particularity the reason(s) for the issuance of USPS' September 6, 2023 Memorandum "Guidance for Nursing Mothers in the Workplace," including the method by which it was circulated and the departments and/or personnel to whom it was disseminated.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 3, 4, 6, 7, 9 ("the reason(s)"), and 10. The Postal Service further objects to this interrogatory on the basis that the information sought is exempted from disclosure under the deliberative process privilege.

Subject to and without waiving the foregoing and general and specific objections above, the Postal Service states that as an independent establishment of the executive branch of the United States Government, 39 U.S.C. § 201, the Postal Service follows all applicable federal laws and regulations. The Postal Service has more than 600,000 employees who work at more than 30,000 facilities and belong to eight separate unions, each with its own collective bargaining agreement. The Postal Service also employes more than 50,000 management officials covering all fifty States and U.S. territories. The Postal Service is subject to the Americans with Disabilities Act ("ADA"), through the Rehabilitation Act, and has longstanding policies and practices regarding employee reasonable accommodations, if requested, including accommodations related to working during pregnancy and upon returning to work from parental leave. Accommodations under both the ADA and the Pregnant Workers Fairness Act ("PWFA" or "Act") included, but were not limited to: change of hours, reduced lifting requirements, additional unpaid breaks, and use of additional equipment such as a chair or stool. Upon return from parental leave, an employee may request accommodations associated with her needs to pump during the workday. Under the relevant Collective Bargaining Agreements, all bargaining employees are provided a fifteen-minute morning and afternoon break, as well as a thirty-minute lunch break. If needed, contractual breaks

may be extended with additional unpaid time to pump. Additional accommodations, such as space to pump, are also provided as requested at the local facility, with support from the locally assigned Occupational Health Nurse Associate ("OHNA") and human resources.

On June 27, 2023, the Postal Service's Human Resource Department transmitted two Posters from the Equal Employment Opportunity Commission ("EEOC") to all field Human Resource Managers notifying them of the Act and its requirements. *See* documents Bates numbered 00011 through 00012. As referenced in the Postal Service's response to Interrogatory No. 1, a memorandum was circulated on or about September 6, 2023, specifically addressing the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act"). The information contained in the September 6, 2023 memorandum had previously been included in the July 13, 2023 memorandum and the June 27, 2023 poster. The purpose of the September 6, 2023 memorandum was to reiterate the existing law and Postal policies, as well as to provide further explanation and details. The email was sent to Headquarters officers, with copies to their managers of integrations and support, with a specific instruction to "share this memo throughout all levels of your management teams to ensure all supervisory and managerial employees are aware of the Postal Service's responsibilities for nursing mothers in the workplace." (*See* documents Bate numbered 00001-00003 and 00011-00012.

**3. State in detail and with particularity the process by which USPS collects and responds to information from employees regarding their needs or requests for Lactation Accommodation.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 6, 7, 9 ("USPS"), 10, and 11. The Postal Service objects to the term "Lactation Accommodation," as set forth in General Objection No. 11, and which the Postal Service interprets to mean those reasonable

accommodations to which a breastfeeding employee may be entitled under the PUMP Act. The Postal Service specifically objects to this interrogatory as not reasonably limited in time or geographical scope, and because it purports to seek information regarding all Postal Service facilities nationwide, rather than the facilities where Plaintiffs Christy Masseur, Taylor Allen, and Melissa George are or were employed. Accordingly, this interrogatory exceeds the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report, and seeks information that is not proportional to the needs of this case.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the period December 1, 2021, through the present, and the facilities where Plaintiffs Christy Masseur, Taylor Allen, and Melissa George are or were employed, the Postal Service states that requests for reasonable accommodations under the PUMP Act are handled in the first instance by local management at the facility and/or facilities where the requesting employee is assigned.

The interactive accommodations process begins upon receipt of a request, whether orally or in writing, from an employee who is seeking an accommodation, including a breastfeeding-related reasonable accommodation. Local management officials process accommodation requests promptly using the guidance in, *inter alia*, Handbook EL-307 (Reasonable Accommodation, an Interactive Process), a copy of which is produced herewith as documents Bates numbered 000017-000110 ("EL-307"). This includes an informal dialog with the employee to determine, among other things, the precise accommodation requested, the reason for the request, and whether the request is time-sensitive. If there is uncertainty as to whether the requested accommodation is reasonable or difficulty accommodating the employee at the local level, local management may consult with the District Reasonable Accommodation Committee, higher-level management,

and/or the Postal Service Law Department. Alternatively, an employee seeking a breastfeeding-related reasonable accommodation may refer their request to their District Reasonable Accommodation Committee ("DRAC") in accordance with EL-307. The "process by which" the Postal Service "responds to information from employees" during this interactive process varies depending on multiple factors—including but not limited to the precise nature of the requested accommodation, the type and size of facility, the employee's duties and responsibilities, and contractual limitations—and may be oral or written.

The confidentiality of any sensitive or medical information provided by the employee requesting an accommodation is preserved by the Postal Service in accordance with the Privacy Act of 1974, as amended, 5 U.S.C. § 552a. Generally speaking, "information from employees regarding their needs or requests for Lactation Accommodation" is not stored in a repository or any searchable database(s).

4. **State the policy and/or procedures that govern the intake and recording of employee complaints, including those related to Lactation Accommodations.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 6, 7, 9 ("employee complaints"), and 10. The Postal Service further objects to this Interrogatory as not reasonably limited in time or geographical scope, and because it purports to seek information regarding all Postal Service facilities nationwide, rather than the facilities where Plaintiffs Christy Masseur, Taylor Allen, and Melissa George are or were employed. Accordingly, this interrogatory exceeds the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report, and seeks information that is not proportional to the needs of this case. The Postal Service further objects to the term "Lactation Accommodations," as set forth in the foregoing general objections, and which the Postal Service interprets to mean

those reasonable accommodations to which a breastfeeding employee may be entitled under the PUMP Act. The Postal Service further objects to the undefined term "employee complaints" as vague and ambiguous, such that it fails to identify with reasonable particularity the information sought by this interrogatory, and confusing because, as employed in this interrogatory, it appears to conflate two distinct concepts: requests for reasonable accommodation, on the one hand, and complaints about the denial of a reasonable accommodation, on the other.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the period December 1, 2021, through the present, the facilities where Plaintiffs Christy Masseur, Taylor Allen, and Melissa George are or were employed, and the "policy and/or procedures" available to bargaining employees similarly situated to Plaintiffs, and interpreting the undefined term "employee complaints" in the broadest sense, the Postal Service states that Plaintiffs Christy Masseur, Taylor Allen, and Melissa George did not complain to the Postal Service about any alleged failure to accommodate their need to express breast milk after returning from parental leave. The Postal Service further states that employees have multiple avenues for raising complaints with respect to requests for breastfeeding-related accommodations, and the manner of "intake" or recording of such complaints, if at all, may vary depending on the avenue an employee selects.

The Postal Service encourages its employees to engage in open and honest communication with their managers and supervisors, which includes proactively notifying the Postal Service of any work-related complaints, concerns, requests, claims, etc. Such communications may be oral or written, formal or informal. To the extent bargaining employees believe that a provision of an applicable collective bargaining agreement, including the right to reasonable accommodation under the law, has been violated, they may opt to pursue the negotiated grievance process, which

is initiated at the local level by and/or through their union steward. Copies of grievances and certain grievance-related documents (such as arbitration decisions, settlement agreements, etc.) are typically maintained electronically in the Postal Service's Grievance Arbitration Tracking System ("GATS"), and may also be maintained at the facility level. Eligible employees may also pursue complaints through the processes and procedures (informally and/or formally) established by the Equal Employment Opportunity Commission ("EEOC") and/or the Merit Systems Protection Board ("MSPB"), each of which maintains its own electronic recordkeeping system. Finally, with respect to accommodation-related complaints, employees may also request a meeting with their DRAC or take advantage of the appeals process outlined in Handbook EL-307. Such requests are maintained by the DRAC.

**5. State in detail and with particularity the actions taken by USPS in response to Plaintiff Masseur, Plaintiff Taylor, and Plaintiff Allen's requests for Lactation Accommodations.**

**Answer:** The Postal Service incorporates General Objection Nos. 3, 6, 7, 9 ("USPS in response to . . . requests for Lactation Accommodations"), 10, and 11. The Postal Service objects to this interrogatory as not reasonably limited in time. The Postal Service further objects to the term "Lactation Accommodations," as set forth in the foregoing general objections, and which the Postal Service interprets to mean those reasonable accommodations to which a breastfeeding employee may be entitled under the PUMP Act. The Postal Service further objects to the phrase "requests for Lactation Accommodations" as it assumes facts that are in dispute, not supported by the factual record, and not alleged in Plaintiffs' Complaint.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the period December 1, 2021, through the time that the Postal Service

learned of the filing of this civil action, the Postal Service states that, as to Plaintiff Masseur, on or around November 15, 2022, Benjamin Campbell, OHNA for the Alabama District received documentation from the George Regional Health System, Obstetrics & Gynecology Associates, stating that Plaintiff Christy Masseur "is pumping every 3 hours and should be allowed ample time & space to continue pumping. *See* document Bates numbered 001095. Plaintiff Masseur also notified Supervisor Cierre Cromwell at the Mobile, Alabama Annex of her intention to pump breast milk after her return from parental leave. The OHNA sent local management officials copies of a guide entitled "How to Create a Motherhood Room" and a December 22, 2010 memorandum with the subject "Nursing Mothers in Federal Employment," copies of which are produced herewith as documents Bates numbered 001106-001110 and 000004 respectively, and instructed them:

> As you may be aware, breast pumping is covered under the Pregnancy Discrimination Act and accommodations should be provided.
>
> Per guidelines (see attached), she should be provided a Motherhood-Room to allow privacy for pumping. This should not be a bathroom or closet but a clean room. This could even be a supervisor's office if needed.
>
> In addition, she can pump every three hours as needed but should be advised that any time exceeding the contractual breaks and lunches will not be paid time or she will need to take leave for the time that exceeds her current breaks. She gets 2 fifteen minute breaks and lunch which should take her through her 8 hour day. If she needs more than the fifteen minutes provided, the time will not be paid time.

In addition, the OHNA contacted Plaintiff Masseur by e-mail and stated:

> Per my communication with our Area OHNA, breast pumping is covered under the Pregnancy Discrimination Act and accommodations should be provided. You should be getting 2 fifteen minute breaks and lunch which should take you through the 8 hour day. If you need more than the fifteen minutes provided, the time will not be paid time.
>
> I have included attachments for Pregnancy-Nursing mothers and also a Motherhood-Room Guide. Under the Pregnancy-Nursing mothers, look under "Reasonable amount of Break Time to Express Milk" which may answer your question.

The OHNA further instructed Plaintiff Masseur to contact Human Resource Management ("HRM") if she believed she was not being accommodated. The OHNA did not receive any communication indicating that Plaintiff Masseur was not being accommodated, nor did HRM or Plaintiff Masseur's local management team.

The Postal Service did not receive requests for lactation accommodations from Plaintiffs Taylor Allen or Melissa George.

**6. Identify the total number of employees of USPS that submitted a Family and Medical Leave Act NALC Form 1 from December 1, 2021 through the present date where "Pregnancy" is selected in response to Question No. 1.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 6, 7, and 10. The Postal Service objects to this interrogatory as not reasonably limited in geographical scope, and because it purports to seek information regarding all Postal Service employees nationwide. Accordingly, this interrogatory exceeds the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report, and seeks information that is neither relevant to the claims at issue in this matter nor proportional to the needs of this case. The Postal Service further objects to this interrogatory because the Postal Service does not collect and maintain Family and Medical Leave Act NALC [National Association of Letter Carriers] Form 1's in a searchable system of records that would allow the Postal Service to filter for pregnancy-related information; accordingly, this interrogatory calls for an exhaustive and time-intensive search that is not proportional to the needs of this case and would impose undue burden on the Postal Service.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the circumstances of Plaintiffs Christy Masseur, Taylor Allen, and

Melissa George, the Postal Service states that Plaintiffs Christy Masseur, Taylor Allen, and Melissa George did not use Family and Medical Leave Act NALC [National Association of Letter Carriers] Form 1. The significant undue burden that would be imposed by this interrogatory must be considered in light of the fact that none of the three Plaintiffs used this form.

**7. Identify the total number of employees of USPS that submitted a Family and Medical Leave Act NALC Form 6 from December 1, 2021 through the date of the search.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 6, 7, and 10. The Postal Service objects to this interrogatory as not reasonably limited in geographical scope, and because it purports to seek information regarding all Postal Service employees nationwide. Accordingly, this interrogatory exceeds the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report, and seeks information that is neither relevant to the claims at issue in this matter nor proportional to the needs of this case. The Postal Service further objects to this interrogatory because the Postal Service does not collect and maintain Family and Medical Leave Act NALC [National Association of Letter Carriers] Form 6's in a searchable system of records that would allow the Postal Service to glean the information requested by this interrogatory without an exhaustive and time-intensive search; accordingly, this interrogatory calls for a search that is not proportional to the needs of this case and would impose undue burden on the Postal Service.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the circumstances of Plaintiffs Christy Masseur, Taylor Allen, and Melissa George, the Postal Service states that Plaintiffs Christy Masseur, Taylor Allen, and Melissa George did not use Family and Medical Leave Act NALC [National Association of Letter

Carriers] Form 6. The significant undue burden that would be imposed by this interrogatory must be considered in light of the fact that none of the three Plaintiffs used this form.

**8. Describe in detail the actions that USPS took to ensure it was providing Lactation Accommodations to its employees.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 4, 6, 7, 9 ("USPS"), 10, and 11. The Postal Service further objects to the undefined and unlimited term "employees" as not reasonably tailored to comply with the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report. As such, it seeks information that is neither relevant to the claims at issue in this matter nor proportional to the needs of this case. The Postal Service further objects to this interrogatory because it is not reasonably limited to employees whose circumstances were similar to Plaintiffs' allegations in the Complaint, and to the extent it seeks confidential personal and personnel information regarding third persons who are not parties to this lawsuit and whose information is wholly irrelevant to Plaintiffs' claims. The Postal Service further objects to the term "Lactation Accommodations," as set forth in the foregoing general objections, and which the Postal Service interprets to mean those reasonable accommodations to which a breastfeeding employee may be entitled under the PUMP Act.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the circumstances of Plaintiffs Christy Masseur, Taylor Allen, and Melissa George, the Postal Service refers to its responses to Interrogatory Nos. 1, 2, 3, and 5, above.

**9. Set forth in detail and with particularity the functional space provided to employees to pump breast milk at work.**

**Answer:** The Postal Service incorporates General Objection Nos. 1, 4, 6, 7, 9 ("employees"), and 10. The Postal Service further objects to the undefined and unlimited term "employees" in this interrogatory as vague and ambiguous, rendering the interrogatory overly broad in time and geographical scope. Accordingly, this interrogatory exceeds the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report, and seeks information that is neither relevant to the claims at issue in this matter nor proportional to the needs of this case. The Postal Service further objects to this interrogatory because it is not reasonably limited to employees whose circumstances were similar to Plaintiffs' allegations in the Complaint, and to the extent it seeks confidential personal and personnel information regarding third persons who are not parties to this lawsuit and whose information is wholly irrelevant to Plaintiffs' claims.

Subject to and without waiving the foregoing and general and specific objections above, and limiting its response to the circumstances of Plaintiffs Christy Masseur, Taylor Allen, and Melissa George, the Postal Service states that Plaintiff Masseur was provided additional time to pump breast milk, and chose to do so in a break room. Plaintiff Masseur elected this location so that her husband could be in the room with her each time she went in to pump. Upon information and belief, Plaintiff Masseur and her husband put a hand-made sign on the door for privacy when in use. Upon information and belief, with the exception of her husband, no one entered the room while she was pumping, and Plaintiff Masseur never complained to management about unauthorized entry or a lack of privacy in the space where she had chosen to pump. Until April of 2023, when she apparently stopped pumping, Masseur received additional time to pump beyond her two fifteen-minute breaks and thirty-minute lunch break.

The Postal Service further states that had Plaintiffs George or Allen requested space and/or break time in order to express breast milk, private office space would have been made available for their use. Had they done so, their requests would have been handled at the facility level, taking into account numerous factors including but not limited to their respective crafts, positions, and Tours, as well as the space(s) available at their duty stations.

**10. If you deny Plaintiffs' Requests to Admit Nos. 6, 7, and/or 8, set forth in detail and with particularity the factual basis for the denial.**

**Answer:** The Postal Service incorporates General Objection Nos. 3 and 9 (RFA No. "8"). The Postal Service further objects to this interrogatory because it is compound in nature and constitutes more than one request. Accordingly, this interrogatory exceeds the scope of discovery set forth in the Court's December 1, 2023 Order and the parties' November 28, 2023 Meet and Confer Report. The Postal Service further objects to this interrogatory as nonsensical insofar as Plaintiffs have only propounded seven Requests for Admission, not eight.

Subject to and without waiving the foregoing and general and specific objections above, the Postal Service refers to and incorporates its responses to Interrogatory Nos. 4, 5, and 9, above.

* * *

Dated: January 11, 2024
Washington, DC

As to objections,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ *Douglas C. Dreier*
DOUGLAS C. DREIER
D.C. Bar #1020234
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2551

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2024, I caused a copy of Defendant's responses to Plaintiff's initial phase discovery requests to be served upon Plaintiffs through their counsel by email.

/s/ *Douglas C. Dreier*
DOUGLAS C. DREIER