**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CHRISTY G. MASSEUR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Civil Action No. 23-2129 (RCL) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT ............................................................................................................................ 4

    A.   USPS Failed to Provide Nursing Mothers with Adequate Accommodations
        Before and After the PUMP Act Was Enacted. ............................................................ 4

        1.   Plaintiffs Provided Notice to USPS. ................................................................ 8

        2.   USPS Had an Obligation to Provide Accommodations to Lactating Mothers Long
            Before the PUMP Act Was Enacted. ............................................................ 10

        3.   The Notice Provided by Plaintiffs Was Sufficient under § 218(g)(1). ........................... 13

    C.   USPS Had No Intention of Providing an Acceptable Location for Plaintiffs to
        Pump and therefore Notice Was Not Required. ........................................................ 16

    D.   The Adequateness of Accommodations is Inherently in Dispute and
        Inappropriate for Summary Judgment ........................................................................ 18

        1.   Break Time ........................................................................................................ 19

        2.   Places ............................................................................................................ 20

    E.   The Court Should Not Grant Summary Judgment When Additional Discovery Is
        Needed. ...................................................................................................................... 23

CONCLUSION........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................................... 3, 4

*Barnett v. PA Consulting Grp., Inc.,*
715 F.3d 354 (D.C. Cir. 2013) ...................................................................................... 4

*Bultemeyer v. Ft. Wayne Community Schs.,*
100 F.3d 1281 (7th Cir. 1996) ...................................................................................... 15

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................................................... 4

*Cripe v. Mineta*, Civil Action,
2006 U.S. Dist. LEXIS 44398 (D.D.C. June 29, 2006) ........................................................ 15

*Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law,*
570 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................... 18

*Dillard v. Kum & Go, L.C.,*
2025 U.S. Dist. LEXIS 62054 (D. Utah Mar. 31, 2025) ................................................. 6, 14

*EEOC v. C.R. Eng., Inc.,*
644 F.3d 1028 (10th Cir. 2011) .................................................................................... 15

*Egudu v. District of Columbia,*
72 F. Supp. 3d 34 (D.D.C. 2014) .................................................................................... 4

*Forbes v. BG3 Capital Group, LLC,*
2024 U.S. Dist. LEXIS 141449 (N.D. Okla. Aug. 8, 2024) ......................................... *passim*

*Harless v. City of Raleigh,*
2025 U.S. Dist. LEXIS 120787 (E.D.N.C. June 24, 2025) ........................................... 13, 16

*Hendricks-Robinson v. Excel Corp.,*
154 F.3d 685 (7th Cir. 1998) ...................................................................................... 15

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
563 U.S. 1 (2011) ...................................................................................................... 13

*Kennedy v. Dresser-Rand Co.,*
193 F.3d 120 (2d Cir. 1999) ........................................................................................ 19

*McGinnis v. Wonder Chemical Co.,*
1995 U.S. Dist. LEXIS 18909 (E.D. Pa. Dec. 21, 1995) ............................................... 14-15

*Moore v. Hartman,*
571 F.3d 62 (D.C. Cir. 2009) ........................................................................................ 3

*Noll v. IBM Corp.,*

787 F.3d 89, (2d Cir. 2015) .................................................................................... 19

*Pappas v. District of Columbia*,
   513 F. Supp. 3d 64 (D.D.C. 2021) ..................................................................... 19

*Schmidt v. Safeway Inc.*,
   864 F. Supp. 991 (D. Or. 1994) ......................................................................... 15

*Scott v. Harris*,
   550 U.S. 372, 127 S. Ct. 1769 (2007) .................................................................. 4

*Taylor v. Phoenixville Sch. Dist.*,
   184 F.3d 296 (3d Cir. 1999) .............................................................................. 15

*United States v. Diebold, Inc.*,
   369 U.S. 654, 82 S. Ct. 993 (1962) ...................................................................... 4

**Statutes**

29 U.S.C. § 207 .................................................................................................... 2

29 U.S.C. § 207(r) ........................................................................................... 11, 12

29 U.S.C. § 215 .................................................................................................... 5

29 U.S.C. § 218d .................................................................................................. 1

29 U.S.C. § 218d(a) .............................................................................................. 6

29 U.S.C. § 218d(a)(1) .......................................................................................... 6

29 U.S.C. § 218d(a)(2) ........................................................................................ 14

29 U.S.C. § 218d(g)(1) ....................................................................................... 6, 7

29 U.S.C. § 218(g)(2)(B) ................................................................................. 12, 16

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................................. 3

Fed. R. Civ. P. 56(d) .......................................................................................... 3, 23

**Other Authorities**

*Consolidated Appropriations Act,*
   2023, Pub. L. No. 117-328, div. kk, § 103(b), 136 Stat. 4459, 6096 ..................................... 12

*Enforcement Guidance: Reasonable Accommodation and*
*Undue Hardship Under the Americans with Disabilities Act,*
   EEOC (Oct. 17, 2002) ....................................................................................... 14

*Nursing Mothers in Federal Employment*,
    Off. of Pers. Mgmt. (Dec. 22, 2010) ................................................................................. 11

*v*

Plaintiffs Christy Masseur, Taylor Allen, and Melissa George hereby file this Opposition to the United States Postal Service's Motion for Summary Judgment (ECF No. 64) and respectfully request the Court deny the Motion for the reasons detailed herein.

### INTRODUCTION

Plaintiffs in this action, Christy Masseur, Taylor Allen, and Melissa George (collectively "Plaintiffs") brought this action against the United States Postal Service ("USPS") because they were denied basic rights under federal law to express breast milk, or pump, at work. Specifically, the Providing Urgent Maternal Protections Act (the "PUMP Act"), 29 U.S.C. § 218d, mandates that employers provide (1) reasonable break time for working mothers to express breast milk for 1 year after the birth of the employee's nursing child each time an employee has the need to express milk, and (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public wherein the employee can express breast milk. USPS failed Plaintiffs, and several other working mothers, by refusing to provide these lactation accommodations.[1]

USPS now struggles to avoid liability for this failure by absurdly claiming that it did not have notice of Plaintiffs' need for accommodation after the PUMP Act went into effect because it was instead notified *before* the PUMP Act was effective, and attempts to defend its poor attempts at accommodation by alleging that the dark, dirty, nonprivate locations subjected to the elements were suitable under the PUMP Act merely because they were not a bathroom. In particular, USPS

---

[1] Plaintiffs have provided a detailed background of the PUMP Act, USPS's failure to follow even its own policies, and the experiences of Plaintiffs and Opt-Ins in their Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Cour-Authorized Notice (ECF No. 67). Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs adopt by reference the Preliminary Statement, Factual Background, and Plaintiffs' FLSA Collective Action Claims Sections here to avoid burdening the Court with repetitive information already before it.

attempts to make three arguments in favor of summary judgment: (1) Plaintiffs were harmed by USPS's actions prior to the PUMP Act's effective date; (2) Plaintiffs did not provide notice; and (3) Plaintiffs were allegedly afforded break time and a private, non-bathroom location in which they could pump. USPS is not entitled to summary judgment on any of these points.

The first two arguments made by USPS essentially challenge whether and when pre-suit notice was made. However, "nothing in the structure or language of the PUMP Act . . . indicates that pre-suit notification is an <u>element</u> of Plaintiff's cause of action." *Forbes v. BG3 Capital Group, LLC*, No. 23-cv-00418-SH, 2024 U.S. Dist. LEXIS 141449, at *5 (N.D. Okla. Aug. 8, 2024) (emphasis in original). Additionally, prior to the enactment of the PUMP Act, USPS was still required to provide the same accommodations to employees, including Plaintiffs, pursuant to Section 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; the PUMP Act amended the FLSA enforcement provisions to create new mechanisms for employees to bring claims for failure to provide such accommodations but did not create new obligations for employers. Therefore, the attempt to require Plaintiffs to "re-notice" USPS of its failing accommodations simply because the remedies available to Plaintiffs changed under federal law is irrational.

Moreover, the Pump Act specifically provides an exception to pre-suit notice where "the employer has indicated that the employer has no intention of providing [a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk]." Thus, even though Plaintiffs did provide notice to USPS, to the extent USPS argues that such notice was prior to the effective date of the Pump Act, its failure to provide the requested accommodations after Plaintiffs' notice indicates that USPS had no intention of providing appropriate lactation accommodations after the Pump Act went into effect.

2

As to USPS's third argument, a factual dispute clearly exists regarding whether USPS provided Plaintiffs adequate accommodations under the PUMP Act. This question should undoubtably be left to the jury. Though USPS claims it provided Plaintiffs with both reasonable break times and private, non-bathroom spaces to pump, many of the documents and discovery responses already produced in this case evidence otherwise. For instance, Plaintiff Allen and Plaintiff George were told to pump in their mail trucks, and Plaintiff Masseur was not given a private, secure place to pump. Further, while the break room and mail trucks in which Plaintiffs were forced to pump may not be bathrooms, they were not secluded from the public and coworkers, not hygienic, and wholly unfit locations to require a new nursing mother to pump. Summary judgement on these heavily disputed material facts is therefore unwarranted.

Finally, Plaintiffs are confident that additional evidence supporting their claims will surface through depositions of USPS affiants, corporate representatives, and anyone answering USPS's discovery responses. The Court can therefore deny USPS's Motion under Federal Rule of Civil Procedure 56(d) and allow the parties to obtain further discovery.

## LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact only exists if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party, resolving all ambiguities and drawing all factual inferences in favor of the nonmoving party." *Moore v. Hartman*, 571 F.3d 62, 66, 387 U.S. App. D.C. 62 (D.C. Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits,

3

if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

The nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id*. A dispute is "genuine" only if a reasonable jury could find for the nonmoving party, and a fact is "material" only if "it is capable of affecting the outcome of the litigation." *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 40 (D.D.C. 2014) (citing *Liberty Lobby*, 477 U.S. at 248). When reviewing a summary judgment motion, the Court must view the facts and draw reasonable inferences "in the light most favorable to the party opposing the" motion. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, (1962)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and thus not appropriate exercises for a judge at summary judgment. *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358, 404 U.S. App. D.C. 439 (D.C. Cir. 2013). USPS wholly fails to meet this standard here.

## ARGUMENT

### A. USPS Failed to Provide Nursing Mothers with Adequate Accommodations Before and After the PUMP Act Was Enacted.

USPS continued to violate the PUMP Act long after it was passed on December 29, 2022, and after the additional remedies provision became enforceable on April 28, 2023. Simply because it interprets all allegations as though "Plaintiffs complain of earlier events," USPS's failure to comply with federal law after that date is not excused. *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgement (ECF-64-1) ("Def. Mem.") at 14.

In short, USPS argues that the PUMP Act was passed on December 29, 2022, but "Congress afforded employers 120 days to come into compliance with the new law—i.e., April 28, 2023." *Id.* It goes on to suggest that "[m]uch of the conduct Plaintiffs complain of here occurred before April 28, 2023." *Id.* Absurdly, this leads USPS to the conclusion that "all Plaintiffs' claims are barred in full because they are premised on events predating April 28, 2023." *Id.* at 15.

Nothing in the PUMP Act grandfathers an employer's prior conduct to allow it to continue failing to provide adequate lactation accommodations to nursing mothers after the passage of the Act. If anything, the fact that Plaintiffs had been complaining of USPS's failure to adequately accommodate nursing mothers highlights its egregious continued failures after the PUMP Act was enacted.

USPS's argument seems to place some sort of burden on Plaintiffs to continue to raise complaints after the enactment of the PUMP Act. Alternatively, their argument seems to be that a violation only occurs at the time an employee raises an issue with the adequacy of their pumping accommodations. *See* Def. Mem. at 14-17 (claiming "every interaction that Plaintiffs Allen and George complain of occurred prior to" April 28, 2023, and arguing that Plaintiff Masseur's complaint occurred on April 24, 2023, and therefore "all Plaintiffs' claims are barred in full because they are premised on events predating April 28, 2023"). However, the PUMP Act does not include a requirement for an employee to continue to make complaints after its enactment, and USPS provides no authority suggesting otherwise. Nor does the PUMP Act specify that violations only occur at the time of complaint. Rather, the PUMP Act amends the FLSA, 29 U.S.C. § 215 to make it unlawful to violate Section 218d, which requires an employer to provide:

(1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

5

(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 218d(a). Thus, regardless of when or how Plaintiffs raised complaints regarding their pumping accommodations, USPS continued to violate Section 218d(a) when Plaintiffs continued to pump *after* April 28, 2023, without reasonable or adequate break time and without adequate locations to express breast milk.

USPS acknowledges that Plaintiff Allen continued to pump while working to September 2023 and that Plaintiff George continued to pump while working to June 2023. Def. Mem. at 15; Allen Resp. to Interrog. (ECF No. 64-15) at 8; George's Resp. to Interrog. (ECF No. 64-20). Plaintiff Masseur continued to pump while working until July 2023. Masseur Resp. to Interrog. (ECF No. 64-9 at 7). Unsurprisingly, USPS does not allege that on April 28, 2023, it made any changes to the inadequate accommodations afforded to Plaintiffs. Rather, for months after the PUMP Act was enacted on April 28, 2023, USPS continued to violate the PUMP Act by failing to provide Plaintiffs and other nursing mothers with adequate lactation accommodations including reasonable break time or a suitable place to pump. Therefore, none of Plaintiffs' claims are barred because these violations continued to occur daily, even after the PUMP Act's expansive remedies provision was enacted. USPS is therefore not entitled to summary judgment merely because it also failed to provide adequate accommodations prior to the enactment of the PUMP Act.

B. **Plaintiffs Provided USPS with Notice and an Opportunity to Cure in Accordance with 29 U.S.C. § 218d(g)(1).**

Plaintiffs bring claims for violations of both 29 U.S.C. § 218d(a)(1), failure to provide reasonable break time, and § 218(a)(2), failure to provide a private, non-bathroom location to pump. Importantly, claims brought under § 218d(a)(1) do not include any notice requirement. *See Dillard v. Kum & Go, L.C.*, No. 2:24-cv-285-TS-JCB, 2025 U.S. Dist. LEXIS 62054, at *6 (D.

Utah Mar. 31, 2025). As such, none of USPS's arguments regarding notice apply to Plaintiffs' Count I for violation of § 218d(a)(1).

First, it should be noted that "there is nothing in the structure or language of the PUMP Act that indicates that pre-suit notification is an <u>element</u> of Plaintiff's cause of action." *Forbes v. BG3 Capital Group, LLC*, No. 23-cv-00418-SH, 2024 U.S. Dist. LEXIS 141449, at *5 (N.D. Okla. Aug. 8, 2024). Rather, it is a condition precedent that Plaintiffs here have satisfied. *See id.* at *6. A condition that all three Plaintiffs have met.

Indeed, USPS does not claim that Plaintiffs never provided notice to their supervisors that they did not have a adequate lactation accommodations while at work; rather, USPS argues that the timing of such complaints and the manner in which they were made were insufficient to satisfy its interpretation of the notice requirement of 29 U.S.C. § 218d(g)(1). *See* Def. Mem. at 23-24. USPS's attempt to write in additional requirements to the statute should be rejected and the Court should decline to apply these arguments to Plaintiffs' Count II violations of § 218d(a)(2). Nothing in the PUMP Act requires notice to be provided *after* the enactment of the statute—rather, Congress gave employers 120 days to comply with the PUMP Act once was passed before an aggrieved employee could seek legal remedies for the failure. The notice provision of the PUMP Act was in effect when it was passed on December 29, 2022.

Additionally, the PUMP Act is silent as to how this notice should be provided. But it is clear that the PUMP Act does not place an onerous requirement on nursing mothers to make a complaint by using precise wording or a specific process. Plaintiffs' complaints to supervisors sufficed as adequate notice to USPS that the locations in which they were required to pump were not private or suitable for pumping.

### 1. Plaintiffs Provided Notice to USPS.

Plaintiffs all informed USPS of their need for lactation accommodations, and Plaintiffs all informed USPS that the lactation accommodations purportedly provided were inadequate.

Plaintiff Masseur raised issues to several managers or supervisors in her facility, including Cierre Cromwell, Darreyel Jackson, Shaquila Finch, Amy Durden, Mary Leonard, and Benjamin Campbell, and objected to using the locker room where she was instructed to pump because there were no locks on the door and employees were frequently coming in and out of the room. Ex. 2, Declaration of Christy Masseur ("Masseur Dec.") at ¶ 6; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2-4 (Interrog. 1), 5 (Interrog. 2). In November 2022, she had a meeting with her supervisor in which she requested to use an empty office, but that request was rejected. Ex. 2, Masseur Dec. at ¶ 7; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2 (Interrog. 1), 5 (Interrog. 2). Alternatively, she asked if she could set up a barrier or partition in the break room but was told that maintenance would need a direct instruction from management to set one up, and this was never done. Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2 (Interrog. 1). Again in February 2023, Plaintiff Masseur spoke with a manager and explained that the locker room was not being cleaned and that people were frequenting the room while she pumped. *Id.* at 3 (Interrog. 1), 5 (Interrog. 2); Ex. 2, Masseur Dec. ¶ 8.

Once again in April 2023, Plaintiff Masseur reiterated to management that the break room was filthy, infested with ants, and people were constantly coming in and out of the room while she was pumping. Ex. 2, Masseur Dec. ¶ 9; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 3 (Interrog. 1). One supervisor even witnessed Plaintiff Masseur pumping in the locker room on numerous occasions and was aware of the lack of privacy. Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 3 (Interrog. 1), 5 (Interrog. 2). Plaintiff Masseur also provided a doctor's note to Mr. Campbell, as required by Ms. Cromwell, and offered to provide the note to Ms. Jackson. Masseur

8

Suppl. Resp. to Interrog. (ECF No. 49-8) at 2-3 (Interrog. 1); *see also* Masseur Health Sys. Note, Def. Mem. Ex. 7 (ECF No. 64-10).

Plaintiff Allen likewise informed management at her facility that she was not given proper lactation accommodations, including voicing those concerns to Cynthia Thompson and Winsome Richardson. Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF No. 64-16) at 2 (Interrog. 1), 3 (Interrog. 2); Ex. 3, Declaration of Taylor Allen ("Allen Dec.") at ¶ 5. Ms. Thompson told Plaintiff Allen to pump in the back of her mail truck in September 2022, despite having knowledge that this location was stuffy and hot, and previously recommending to Plaintiff Allen to just "crack the back door." Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2). Plaintiff Allen also complained to Ms. Richardson in December 2022 that the back of the mail truck was not an ideal place to pump because it was stuffy and dark. *Id.* at 2 (Interrog. 1), Ex. 3, Allen Dec. at ¶ 7. Nonetheless, no steps were taken to provide a secure, private place suitable for Plaintiff Allen to pump. Ex. 3, Allen Dec. ¶ 9; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF No. 64-16) at 2 (Interrog. 1), 3 (Interrog. 2). Instead, she was told to "do what you got to do, just make sure the mail gets delivered." Ex. 3, Allen Dec. at ¶ 8.

Finally, Plaintiff George also raised complaints about pumping in her mail truck to management, including voicing those concerns to David Vold and Brian Lene. Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3); Ex. 4, Declaration of Melissa George ("George Dec.") at ¶¶ 6-8. Specifically, in February or March of 2023, Plaintiff George informed both Mr. Vold and Mr. Lene that her mail truck was unsuitable for pumping breast milk. Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF No. 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3); Ex. 4, George Dec. ¶¶ 6-8. Plaintiff George even asked to pump in the break room on the condition that she could hang a sheet to create a sense of privacy;

this request was denied. Ex. 4, George Dec. ¶ 6. Her supervisors told Plaintiff George that she had no other option than to pump in the mail truck, and that it was "the best [they] can do." *Id.* at ¶ 7.

Based on these complaints, USPS was given plenty of fair notice that Plaintiffs were not being provided adequate lactation accommodations, including reasonable break time and appropriate non-bathroom locations to pump. USPS's argument that it was not provided notice or an opportunity to cure its failure to provide adequate lactation accommodations is meritless and contradicted by the factual record developed thus far.

### 2. USPS Had an Obligation to Provide Accommodations to Lactating Mothers Long Before the PUMP Act Was Enacted.

USPS absurdly claims that it was not provided notice or a time to cure Plaintiffs' lack of adequate space to pump because it alleges Plaintiffs made complaints prior to the enactment of the remedies provision of the PUMP Act on April 28, 2023. *See* Def. Mem. at 19, 23-24. However, as stated above, the provision of the PUMP Act requiring employers to provide a private, non-bathroom location for lactating mothers to utilize and the portion of the PUMP Act conditioning suit on notice and a 10-day period to cure were effective when the Act was passed on December 29, 2022. Plaintiffs each made complaints to their supervisors after this time. *See, e.g.*, Ex. 2, Masseur Dec. ¶ 8; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 3 (Interrog. 1), 5 (Interrog. 2); Ex. 3, Allen Dec. at ¶ 7; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2); Ex. 4, George Dec. ¶¶ 6-8; Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF No. 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3).

The delay in the enactment of the expanded Remedies clause of the statute essentially gave employers 120 days to come into compliance with the PUMP Act (rather than the ten days required before filing suit) and the complaints raised by Plaintiffs. Indeed, USPS had several months, even after April 28, 2023, to cure its deficiencies, as Plaintiffs continued to pump through at least June

of 2023, requiring appropriate and adequate lactation accommodations that were still not provided even after April 28, 2023. Plaintiffs did not file suit seeking remedies until July 2023.

USPS's argument is made more nonsensical by the fact that the PUMP Act was not even the first law or regulation that required it to provide adequate break time or a private, non-bathroom location for lactating mothers to pump—it was merely the first to allow aggrieved employees to seek expanded legal remedies for a failure to provide these accommodations. Prior to the passage of the PUMP Act, USPS was required, pursuant to the Reasonable Break Time for Nursing Mothers Act, Section 7 of the FLSA, 29 U.S.C. § 207(r), enacted in March 2010, to provide:

> (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
> (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

The PUMP Act therefore should have come as no surprise to USPS, as it includes these very same requirements. 29 U.S.C. § 218(a).

Additionally, the "policy" quoted heavily in USPS's statement of facts (ECF No. 64-2) is a Memorandum from the United States Office of Personnel Management from December 22, 2010. *Nursing Mothers in Federal Employment*, OFF. OF PERS. MGMT. (Dec. 22, 2010) (ECF No. 40-3 at 5). This Memorandum states that "Federal agencies should provide a reasonable break time for a civilian employee . . . to express breast milk for her nursing child for 1 year after the child's birth each time the employee has a need to express milk." *Id.* It goes on to state that "Federal agencies should take immediate action to make arrangements to provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, for employees to express breast milk. *Id.* at 6. USPS has thus long had a legal obligation to provide accommodations

11

to lactating mothers, and its disingenuous attempt to characterize the enactment of the PUMP Act as the first time it was ever required to do so should be rejected.

Essentially, the heart of USPS's argument is that, had Plaintiffs provided notice after April 28, 2023, using a strict, formal complaint process and/or by submitting complaints to the EEOC, USPS would have suddenly started providing the requested lactation accommodations in accordance with the PUMP Act. Def. Mem. at 19, 24. This argument is wholly unsupported. Nothing in the factual record to date suggests that had Plaintiffs provided notice *again* after April 28, 2023, USPS suddenly would have started providing the requested lactation accommodations, especially in light of its refusal to provide accommodations to Plaintiffs even when previously required to do so by FLSA § 207(r) and federal guidelines.

Regardless, nothing in the PUMP Act requires the notice contemplated by § 218(g)(1) to have been made *after* a certain date; instead, it only requires an employee to give an employer ten days to comply with the PUMP Act prior to filing suit. While Congress expressly delayed the effective date of the Remedies and Clarification provision of the Act, it did not do so for the compliance or notice provisions. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, div. kk, § 103(b), 136 Stat. 4459, 6096. Moreover, the PUMP Act does not even require such notice to have been made after the Act was passed on December 29, 2022. In fact, where an employee has requested accommodations and been rejected prior to the passage of the PUMP Act, such situation would fall squarely within the exception to the pre-suit notice requirement for employers who have "indicated that the employer has no intention of providing the place described in subsection (a)(2)." 29 U.S.C. § 218(g)(2)(B). Thus, to the extent USPS argues that the notice provided by Plaintiffs is invalid because it occurred prior to the enactment of the PUMP Act, its

failure to provide the requested accommodations after Plaintiffs raised their complaints highlights its lack of intention to provide an adequate space for mothers to pump. *See* Section C, *infra*.

### 3. The Notice Provided by Plaintiffs Was Sufficient under § 218(g)(1).

USPS also claims that Plaintiffs provided no notice because they did not follow "the Postal Service's formal established means to complain about breast pumping" and "did not pursue complaints through the processes and procedures established by the Equal Employment Opportunity Commission and/or the Merit Systems Protection Board. Def. Mem. at 19. While the PUMP Act does not set forth a specific method for providing notice, it certainly does not contemplate such a rigid requirement as USPS advances.

No cases have directly explained how a plaintiff can satisfy the notice burden under the PUMP Act; however, the FLSA, which encompasses the PUMP Act, requires only that "the recipient has been given fair notice that a grievance has been lodged." *Harless v. City of Raleigh*, No. 5:24-CV-478-BO-BM, 2025 U.S. Dist. LEXIS 120787, at *8 (E.D.N.C. June 24, 2025) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). Indeed, courts have found an example of adequate notice to be notes submitted by a nursing mother's physician. *See id.*

USPS was certainly given "fair notice" that the purported lactation accommodations provided to Plaintiffs were unsuitable. As detailed above, Plaintiffs, on numerous occasions to numerous supervisors, expressed the problems they were experiencing with the locations in which they were told to pump. *See* Section B.1, *supra*. Putting aside their complaints about hygiene and temperature of the spaces provided, Plaintiffs all complained about the security and privacy of the locations they were provided. *See, e.g.*, Ex. 2, Masseur Dec. ¶¶ 6, 8-9; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 3-4 (Interrog. 1), 5 (Interrog. 2); Ex. 3, Allen Dec. ¶ 8; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF No. 64-16) at 2 (Interrog. 1); Ex. 4, George Dec. ¶¶ 6-8;

Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF No. 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3).

Thus, USPS was fairly put on notice that it was failing to provide an adequate "place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2). It was also put on notice of the ways in which these lactation accommodations were deficient.

Further, USPS is incorrect in claiming that an "interactive process" is required to determine the correct accommodations for Plaintiffs and other nursing mothers at its facilities. *See* Def. Mem. at 17. While it may be true that under the Americans with Disabilities Act (the "ADA"), an "interactive process" is triggered after an employee notifies employers of their disability and limitations, "[n]o such 'interactive process' is contemplated by the PUMP Act." *Dillard*, 2025 U.S. Dist. LEXIS 62054, at *8.

> Notably, the purpose of the ADA's interactive process is to identify an appropriate accommodation for the employee based on the employee's disclosed disability. Under the PUMP Act, the appropriate "accommodation" is clearly identified within the statute: lactating employees are to be provided breaks as needed [and a private place, other than a bathroom] to pump."

*Id.* Nonetheless, if the ADA were instructive, an employee need only use "plain English," and need not mention the ADA or use the phrase "reasonable accommodation" to put the employer on notice. *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#N_19_. Several examples of notice that courts have found adequate under the ADA include employees: telling their supervisor that pain prevented them from working; stating that they could not do a particular job; submitting a doctor's note; or asking for continued employment after a disability. *McGinnis v.*

14

*Wonder Chemical Co.*, No. 95-4384, 1995 U.S. Dist. LEXIS, at *13 (E.D. Pa. Dec. 21, 1995) (employer on notice that accommodation had been requested because: (1) employee told supervisor that his pain prevented him from working and (2) employee had requested leave under the Family and Medical Leave Act); *Bultemeyer v. Ft. Wayne Community Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (an employee with a known psychiatric disability requested reasonable accommodation by stating that he could not do a particular job and by submitting a note from his psychiatrist); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 694 (7th Cir. 1998) ("[a] request as straightforward as asking for continued employment is a sufficient request for accommodation"). "[T]he notice or request 'does not have to be in writing, be made by the employee, or formally invoke [any] magic words . . . ." *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)); *see also Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994) ("statute does not require the plaintiff to speak any magic words. . . The employee need not mention the ADA or even the term 'accommodation.'"). Moreover, USPS's contention that it was not provided "reasonable" notice is question of fact unsuitable for summary judgment. *See, e.g.*, *Cripe v. Mineta*, Civil Action No. 03-2206 (RWR), 2006 U.S. Dist. LEXIS 44398, at *14 (D.D.C. June 29, 2006)("This case necessarily turns on the fact-based question of whether defendant reasonably accommodated plaintiff, or alternatively whether plaintiff failed to timely provide adequate medical information…It is impossible to determine at this stage who is correct. Accordingly, defendant's summary judgment motion on plaintiff's discrimination claim must be denied.").

In light of these examples of what prior courts have found to be adequate notice—both under the ADA and under the PUMP Act—USPS should not be permitted to read additional requirements into the statute that Plaintiffs should have been required to (1) follow some formal,

15

established complaint procedure; (2) continue to escalate numerous complaints through numerous supervisors or HR managers; (3) pursue complaints through EEOC procedures; or (4) pursue complaints through the Merit Systems Protection Board. Def. Mem. at 19, 22. Plaintiffs notified their supervisors of the health, safety, and privacy concerns (as well as hygienic concerns) with the locations where they were told to pump. Plaintiff Masseur even provided a doctor's note, which has been viewed as adequate notice under the PUMP Act. *Harless*, 2025 U.S. Dist. LEXIS 120787, at \*8. Thus, the notice provided by Plaintiffs to their supervisors was adequate pursuant to the requirements of the PUMP Act. At the very least, whether the notice was adequate is a disputed question of fact.

C. **USPS Had No Intention of Providing an Acceptable Location for Plaintiffs to Pump and therefore Notice Was Not Required.**

Even if the complaints raised by Plaintiffs were not adequate notice under § 218(g)(1), though Plaintiffs still maintain they were, USPS's consistent failure to address those complaints and provide the requested accommodations "indicates that [USPS had] no intention of providing" a private, non-bathroom location in which Plaintiffs could pump. Therefore, Plaintiffs were excepted from the notice requirement altogether. *See* 29 U.S.C. § 218(g)(2)(B).

In *Forbes v. BG3 Cap. Grp., LLC*, the court analyzed the exception to the notice requirement in the PUMP Act. 2024 U.S. Dist. LEXIS 141449, at \*13-14. The plaintiff in *Forbes* returned to work in March 2023[2] and her employer provided an office for her to pump but informed her that "in no uncertain terms" she had to allow others into the office when she was pumping if they needed access. *Id.* at \*2, 14. Other employees did walk in on Plaintiff multiple times while she was pumping, the employer monitored her by security camera while she was pumping, and her

---

[2] Notably, Plaintiff made her request for reasonable accommodates to express breast milk prior to April 28, 2023. *Forbes*, 2024 U.S. Dist. LEXIS 141449, at \*2.

employer treated her "with hostility and animosity when she needed to pump." *Id.* Moreover, prior to this situation experienced by Plaintiff, other employees had also requested an appropriate pumping space. *Id.* at *13. The court found these allegations sufficient to conclude that plaintiff's employer "had no intention of providing a space that complied with § 218d(a)(2)." *Id.* at *14. Accordingly, the court held that the plaintiff was not subject to the condition precedent of 218d(g)(1). *Id.*

In this case, Plaintiff Masseur complained to her supervisors no less than three separate times that the location where she was forced to pump was unhygienic and non-secure, as fellow employees were coming in and out of the locker room while she was pumping. Ex. 2, Masseur Dec. ¶¶ 6-9; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2-3 (Interrog. 1), 5 (Interrog. 2). Similarly, Plaintiff Allen informed her supervisors at least twice that her mail truck was not a suitable place to pump, even though she had already raised this issue after her first pregnancy in 2021. Ex. 3, Allen Dec. ¶¶ 7-9; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2). Likewise, Plaintiff George told her supervisors that her mail truck was unsecure and unsuitable for pumping. Ex. 4, George Dec. ¶¶ 6-8; Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF No. 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3). Nonetheless, at no point after Plaintiffs raised their concerns were their supervisors at USPS willing to make any additional accommodations to find a suitable private, non-bathroom location in which Plaintiffs could pump. Accordingly, Plaintiffs all found it useless to continue to raise complaints after April 28, 2023, because USPS's actions up until that point indicated that they would continue to be unwilling to provide an adequate place to pump. Ex. 2, Masseur Dec. ¶ 13; Ex. 3, Allen Dec. ¶ 13; Ex. 4, George Dec. ¶ 11.

17

Worse, USPS's evidence suggests that they would potentially retaliate against Plaintiffs for seeking appropriate accommodations; it referred to one employee who requested accommodations as "the same girl who cost the post office 25,000 for lactation room," further supporting Plaintiffs' contentions that further requests for appropriate lactation accommodations would be met with indifference at best and even hostility. *See* Ex. 7, Estelle Email, USPSMasseur001904-06; *see also* Dec. of Whitney Pryor (ECF 67-13) at ¶ 10 (being escorted from the building after asking for a break to pump).

USPS's conduct is comparable to the defendant in *Forbes*: USPS took no action to ensure that Plaintiffs received a private, secure location to pump, despite being told of the unsuitability of the locker room and mail trucks where Plaintiffs were forced to pump. *See, e.g.*, Ex. 2, Masseur Dec. ¶¶ 6, 8-9; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2-4 (Interrog. 1), 5 (Interrog. 2); Ex. 3, Allen Dec. ¶ 8; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF No. 64-16) at 2 (Interrog. 1); 3 (Interrog. 2); Ex. 4, George Dec. ¶¶ 6-8; Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF No. 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3). USPS's actions indicate that it had no intention of providing a space to any Plaintiff that complied with § 218d(a)(2), and therefore Plaintiffs were not required to provide repeated notice as a condition precedent to filing suit.[3]

## D. The Adequateness of Accommodations is Inherently in Dispute and Inappropriate for Summary Judgment

USPS fails to cite any caselaw supporting its contention that the Court should decide reasonableness of the lactation accommodations on summary judgment. Its entire argument in

---

[3] USPS should also not be permitted to argue that Plaintiffs cannot establish that it had no intention to provide such space because notice was never given. As the *Forbes* Court stated, such argument would turn the structure of § 218d(g) on its head as subsection (g)(1) only requires notification in cases that do <u>not</u> fall within subsection (g)(2).

18

support of this contention relies on inherently disputed facts put before this Court (without the benefit of complete discovery). The facts relied on by USPS are clearly in dispute. In fact, whether USPS provided adequate lactation accommodations to Plaintiffs, and to other nursing mothers, is the very central issue of this case.

Most importantly, the reasonableness of an accommodation is an appropriate inquiry for the tryer of fact to be decided "based on all the circumstances of the case." *Di Lella v. Univ. of Dist. of Columbia David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 8 (D.D.C. 2008) (concluding that, because whether an "accommodation is effective or reasonable depends on the facts and circumstances of each case," such a determination cannot be made on a motion to dismiss); *see also Noll v. IBM Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an . . . accommodation is a 'fact-specific' question that often must be resolved by a factfinder."); *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999) (noting that "the question of whether a proposed accommodation is reasonable is 'fact-specific' and must be evaluated on 'a case-by-case basis.'"). The Court should accordingly decline to engage in the fact-intensive reasonableness inquiry here, especially without the benefit of a full evidentiary record. *See, e.g., Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 96-97 (D.D.C. 2021).

### 1.   Nursing Employees Were Not Provided Adequate Break Time to Pump.

USPS essentially relies on a single piece of evidence to support its contention that it indisputably provided "adequate" break time to lactating mothers: a general break-time policy. Def. Mem. at 4-5. Not only does USPS fail to demonstrate how a general break-time policy that applies to all employees (including males and other non-nursing employees) provides undisputed proof that these breaks sufficiently accommodate new mothers who need to pump breast milk, it also fails to acknowledge a plethora of facts demonstrating it failed to follow its own policies. USPS further relies on its general policy guidance about providing lactation accommodations;

19

however, evidence suggests not only that this guidance was poorly communicated to post offices, if at all, but it failed to adhere to its own policies time and time again by failing provide adequate accommodations. *See* Ex. 5, Glassburner Email (Officer in Charge indicating he is completely unaware of lactation accommodations and cannot find guidance).

USPS contends that all Plaintiffs were provided with two fifteen-minute breaks and one thirty-minute break. Def. Mem. at 24. To the contrary, Plaintiff George and Plaintiff Allen attest they typically receive only two ten-minute breaks in addition to the thirty-minute break. Ex. 4, George Dec. ¶ 4; Ex. 3, Allen Dec. at ¶ 4. Nonetheless, USPS fails to provide any evidence suggesting even the permitted breaks are adequate lactation accommodations or that it provided accommodations for nursing mothers to adequately take breaks beyond those permitted. Plaintiff Masseur clearly claims that the permitted breaks were inadequate to accommodate new mothers who need to pump breast milk. Ex. 2, Masseur Dec. at ¶ 12-13.

USPS further contends that neither Plaintiff Allen nor Plaintiff George claim that they were provided with insufficient time to pump. Def. Mem. at 25. This assertion is wholly false. All Plaintiffs have shown that this was not enough break time to adequately pump breast milk. For example, Plaintiff Allen, as a city mail carrier on a mail route, was told to pump in her mail truck. Ex. 3, Allen Dec. at ¶ 7. USPS failed to accommodate any additional break time away from Plaintiff Allen's route, gave her the same route and same mail load, and the "permitted" breaks were not enough time to pump her breastmilk. *Id.* at ¶ 11. Worse, she was frequently pressured to "pump as quickly as possible" in order to finish her route. *Id.* Likewise, Plaintiff George, also a city mail carrier, was not provided sufficient break time to pump breast milk. Ex 5, George Dec. at ¶ 9. All Plaintiffs clearly indicate they were not provided with appropriate break time and that they were met with USPS's unwillingness to provide appropriate accommodations, including

appropriate time to pump. Ex. 2, Masseur Dec. at ¶¶ 12-13; Ex. 3, Allen Dec. ¶¶ 11, 13; Ex. 4, George Dec. at ¶¶ 9, 11.

Plaintiffs' statements concerning USPS's failure to provide reasonable break time to accommodate nursing mothers do not exist in a vacuum. Numerous other employees submitted declarations in support of Plaintiffs' Motion for Collective Certification demonstrating that USPS systemically fails to provide appropriate lactation accommodations when it comes to reasonable and adequate break times. *See* Bahlman Dec. (ECF 67-9) at ¶ 9; Berry Dec. (ECF 67-10) at ¶ 13; Davis Dec. (ECF 67-11) at ¶ 9; Maynard Dec. (ECF 67-12; Pryor Dec. (ECF 67-13) at ¶¶ 9-10; Reyes Dec. (ECF 67-14) at ¶ 9; Teap Dec. (ECF 67-15) at ¶ 9; Vanhoose Dec. (ECF 67-16) at ¶¶10-12.

### 2. Nursing Employees Were Not Provided with Suitable, Private, Non-Bathroom Spaces in which to Pump.

USPS's assertion that it provided Plaintiffs an adequate and reasonable place to pump breast milk is even more absurd than its claim that it provided adequate and reasonable break time, especially in light of USPS telling requiring numerous employees, including Plaintiff Allen and Plaintiff George, to pump breast milk in their mail trucks while on their mail route. Ex. 3, Allen Dec. at ¶¶ 7-8; Ex. 4, George Dec. at ¶ 7; *see also e.g.*, Declaration of Virginia Reyes (ECF No. 67-14) at ¶¶ 6-7; Declaration of Zsa-Zsa Berry (ECF No. 67-10) at ¶¶ 6-7.

Plaintiff George shows she was not provided with adequate lactation accommodation space. She was initially told she could pump in the break room, the bathroom, or mail truck, but when she asked to be able to pump in the break room at the facility on the condition that she be able to hang a sheet to provide a greater sense of privacy and security, USPS denied that request. Ex. 4, George Dec. at ¶ 6. USPS told Plaintiff George that the only other suitable option was to pump in her mail truck: a truck with no heating or air conditioning, that is open to the public with

21

an unsecured cabin, and completely unhygienic. *Id.* at ¶ 7. Plaintiff Allen had a similar experience when USPS told her that the only place she could pump was in her mail truck along her route. Ex. 3, Allen Dec. at ¶ 7. Again, a mail truck with no heating or air conditioning, that is open to the public with an unsecured cabin, and completely unhygienic. *Id.* at ¶ 8. It is wholly disingenuous for USPS to suggest that a mail truck is an appropriate place for nursing mothers to pump breast milk.

Although Plaintiff Masseur was not required to pump in a mail truck (likely only because she is not a mail carrier), her offered accommodations were likewise inadequate. Plaintiff Masseur raised issues to several managers or supervisors in her facility, including Cierre Cromwell, Darreyel Jackson, Shaquila Finch, Amy Durden, Mary Leonard, and Benjamin Campbell, and objected to using the locker room where she was instructed to pump because there were no locks on the door and employees were frequently coming in and out of the room. Ex. 2, Masseur Dec. at ¶ 6; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2-4 (Interrog. 1), 5 (Interrog. 2). In November 2022, she had a meeting with her supervisor in which she requested to use an empty office, but that request was rejected. Ex. 2, Masseur Dec. at ¶ 7; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2 (Interrog. 1), 5 (Interrog. 2). Alternatively, she asked if she could set up a barrier or partition in the break room but was told that maintenance would need a direct instruction from management to set one up, and this was never done. Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 2 (Interrog. 1). Again in February 2023, Plaintiff Masseur spoke with a manager and explained that the locker room was not being cleaned and that people were frequenting the room while she pumped. Id. at 3 (Interrog. 1), 5 (Interrog. 2); Ex. 2, Masseur Dec. ¶ 8. Once again in April 2023, Plaintiff Masseur reiterated to management that the break room was filthy, infested with ants, and people were constantly coming in and out of the room while she was pumping. Ex.

22

2, Masseur Dec. ¶ 9; Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 3 (Interrog. 1). One supervisor even witnessed Plaintiff Masseur pumping in the locker room on numerous occasions and was aware of the lack of privacy. Masseur Suppl. Resp. to Interrog. (ECF No. 49-8) at 3 (Interrog. 1), 5 (Interrog. 2).

Again, Plaintiffs' statements concerning inadequate and unreasonable lactation accommodations do not exist in a vacuum. Numerous other employees have provided declarations in support of Plaintiffs' Motion for Collective Certification demonstrated USPS's systemic failure to provide reasonable accommodations by requiring nursing mothers, like Plaintiffs, to pump breast milk in public spaces, mail trucks, and dirty medical closets. *See, e.g.,* Bahlman Dec. (ECF 67-9) at ¶¶ 6-7;  Berry Dec. (ECF 67-10) at ¶¶ 6-8; Davis Dec. (ECF 67-11) at ¶¶ 6-7; Maynard Dec. (ECF 67-12; Pryor Dec. (ECF 67-13) at ¶¶ 6-8; Reyes Dec. (ECF 67-14) at ¶¶ 6-7; Teap Dec. (ECF 67-15) at ¶¶ 6-7 (required to pump in a medical closet with equipment that appeared to have bodily fluids); Vanhoose Dec. (ECF 67-16) at ¶¶6-9.

USPS argues that the PUMP Act requires a location for lactating mothers that is *nothing more* than a private space that is not a bathroom. Accordingly, under USPS's view, requiring an employee to pump in a coat closet, a building's crawl space, or the doghouse behind a supervisor's home would be acceptable locations for employers to provide. USPS's own documents refute this stance, as its own employee, Occupational Health Nurse Administrator Benjamin Campbell, admitted that the location provided for pumping "should not be a **bathroom or closet** but a **clean room**." Campbell's Email (ECF No. 40-3) at 9-10 (emphasis added).

As demonstrated not only herein, but also in Plaintiffs' Motion for Collective Certification (ECF No. 67), USPS has consistently failed to provide adequate lactation accommodations to new mothers by requiring Plaintiffs and other new mothers to pump breast milk in unsecured and

23

unhygienic places from open mail trucks to dirty medical closets. USPS's attempt to have the Court decide the adequacy of its accommodations, especially in light of so many disputed facts and discovery left to conduct, should be wholly rejected.

### E. <u>The Court Should Not Grant Summary Judgment When Additional Discovery Is Needed.</u>

Finally, the Court should deny USPS's Motion, or at least defer considering the motion, prior to Plaintiffs having an opportunity to depose the affiants who provide support to the Motion or the individuals who answered interrogatories on behalf of USPS. Federal Rule of Civil Procedure 56(d) allows the Court to defer consideration or deny a motion when the nonmovant does not have essential facts to support its opposition.

USPS's Motion is premature in that discovery is still in its early stages; indeed, no depositions have been taken by either party. *See* Ex. 2, Pescia Dec. at ¶¶ 3-5. USPS consistently parrots written federal guidelines on accommodations for nursing mothers, but discovery to date wholly is short on whether such accommodations were actually provided in practice. In fact, based on the documents that have been provided thus far, the opposite appears true. *See, e.g.*, Ex. 6, Estelle Email, USPS Masseur002253-54 (suggesting six nursing mothers at one facility be told to pump in a restroom). Additionally, the claims made in several declarations attached to support USPS's Motion are directly contradicted by Plaintiffs' statements, some of the documents already produced, and may be further refuted by other witness testimony. Accordingly, further and full development of the facts should occur, and at the very least the Court should deny the Motion to allow discovery to progress, if not deny USPS's Motion in its entirety.

## **CONCLUSION**

For the reasons detailed above, the Court should deny the Motion for Summary Judgment filed by USPS. No accommodations required by the PUMP Act were provided to Plaintiffs and USPS should not be allowed to avoid liability for its blatant violation of federal law.

Dated: July 11, 2025                                 Respectfully submitted,

                                                    SIRI & GLIMSTAD LLP

                                                    */s/ Leslie l. Pescia*
                                                    Leslie L. Pescia (*pro hac vice*)
                                                    Christopher Williams (D.C. Bar No. NY0537)
                                                    745 Fifth Avenue, Suite 500
                                                    New York, New York 10151
                                                    Tel: (212) 532-1091
                                                    E: lpescia@sirillp.com
                                                    E: cwilliams@sirillp.com

                                                    *Attorneys for Plaintiffs and the FLSA Collective*

25