**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CHRISTY G. MASSEUR, TAYLOR ALLEN, and MELISSA M. GEORGE, o*n behalf of themselves and all others similarly situated*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>THE UNITED STATES POSTAL SERVICE,<br><br>Defendant. | **Civil Action No.: 1:23-CV-2129-RCL** |

<u>**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND MATERIAL FACTS**</u>

Pursuant to Local Civil Rule 7(h), and in support of their Opposition to Defendant's Motion for Summary Judgment, Plaintiffs provide the following genuine issues and material facts identified by the United States Postal Service ("USPS") to which there exists a genuine dispute:

1.      USPS asserts that it had a policy to provide reasonable break time for its employees to express breast milk "during the period at issue in the Complaint" but cites to the general Office of Personnel Management's *Nursing Mothers in Federal Employment* (ECF 40-3 at 5), and to its own *Guidance for Nursing Mothers in the Workplace* (ECF 40-3 at 7), which was not created until **September 6, 2023**. Moreover, simply because a policy existed in writing does not mean that it was followed. Indeed, Plaintiffs, as well as eleven other women who were or are employees at USPS locations across the country, have identified numerous instances where this "policy"—as well as the PUMP Act, 28 U.S.C. § 218d—was not followed and they were not provided reasonable break time to express breast milk. *See* Ex. 3, Declaration of Christy Masseur ("Masseur Dec.") at

¶¶ 12-14; Declaration of Cierre Cromwell (ECF 64-24) at ¶ 3 (confirming that Plaintiff Masseur raised concerns related to the amount of time she was provided to pump); Ex. 4, Declaration of Taylor Allen ("Allen Dec.") at ¶¶ 4, 10-12; Ex. 5, Declaration of Melissa George ("George Dec.") at ¶¶ 4, 9-10; Declaration of Amanda Bahlman ("Bahlman Dec.") (ECF 67-9) at ¶¶ 9-11; Declaration of Zsa Zsa Berry ("Berry Dec.") (ECF 67-10) at ¶¶ 4, 10, 13-15; Declaration of Sonja Davis ("Davis Dec.") (ECF 67-11) at ¶¶ 9-11; Declaration of Brook Maynard ("Maynard Dec.") (ECF 67-12) at ¶¶ 4, 6, 9-10; Declaration of Whitney Pryor ("Pryor Dec.") (ECF 67-13) at ¶¶ 9-12; Declaration of Virginia Reyes ("Reyes Dec.") (ECF 67-14) at ¶¶ 4, 9-11; Declaration of Sophanny Teap ("Teap Dec.") (ECF 67-15) at ¶¶ 9-11; Declaration of Shaswanda Vanhoose ("Vanhoose Dec.") (ECF 67-16) at ¶¶ 4, 12-14. Further, USPS supervisors were not even aware of any internal USPS policy for accommodating lactating mothers. *See* Ex. 7, Glassburner Email, at USPS Masseur003074.

3.      USPS asserts that mothers who need additional time to pump outside of their compensated 15 minute break would be provided additional breaks, but would not be compensated for these breaks. USPS puts the onus on "managers" to "use their best judgment on what is considered reasonable." However, Plaintiffs, as well as eleven other women from USPS locations across the country, have experienced the USPS failing to provide additional break time necessary to pump and/or managers who determined that additional time was unnecessary. *See* Ex. 3, Masseur Dec. at ¶¶ 12-14; Declaration of Cierre Cromwell (ECF 64-24) at ¶ 3; Ex. 4, Allen Dec. at ¶¶ 4, 10-12; Ex. 5, George Dec. at ¶¶ 4, 9-10; Bahlman Dec. (ECF 67-9) at ¶¶ 9-11;  Berry Dec. (ECF 67-10) at ¶¶ 4, 10, 13-15; Davis Dec. (ECF 67-11) at ¶¶ 9-11; Maynard Dec. (ECF 67-12) at ¶¶ 4, 6, 9-10; Pryor Dec. (ECF 67-13) at ¶¶ 9-12; Reyes Dec. (ECF 67-14) at ¶¶ 4, 9-11; Teap Dec. (ECF 67-15) at ¶¶ 9-11; Vanhoose Dec. (ECF 67-16) at ¶¶ 4, 12-14.

4.      Plaintiffs Allen and George were provided only two ten-minute breaks during the day as well as a thirty-minute lunch break. *See* Ex. 4, Allen Dec. at ¶ 4; Ex. 5, Declaration of Melissa George ("George Dec.") at ¶ 4.

19.      Plaintiff Masseur did not receive additional breaks to pump beyond her two fifteen-minute and one thirty-minute breaks. *See* Ex. 3, Masseur Dec. at ¶ 4, 12. Plaintiff Masseur pumped only during these paid breaks to avoid disruption in pay. *Id.* Additionally, Plaintiff Masseur was disciplined for failing to operate a machine at a time when she planned on going to pump. *Id.* at ¶ 10; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 3 (Interrog. 1), 5 (Interrog. 2). As a result of being denied adequate time and an appropriate location to pump, Plaintiff Masseur experienced painful engorgement and her milk supply was affected, causing noticeable weight loss and subsequent medical treatment for heartburn in her baby. Ex. 3, Masseur Dec. at ¶ 14.

22.      Plaintiff Allen received only two **ten**-minute breaks and one thirty-minute lunch break during each shift. *See* Ex. 4, Allen Dec. at ¶ 4. These breaks did not provide enough time to adequately pump. *Id.* at ¶ 11. Plaintiff Allen was hesitant to take additional breaks because she was anxious that she would not complete her mail deliveries on time and/or that her supervisors would reprimand her. *Id.* at ¶ 12.

25.      Plaintiff Allen communicated to her supervisors that she was pumping throughout the day; nonetheless, she was frequently pressured to pump as quickly as possible so she could finish her route and make it home in time to feed her baby despite her supervisors continuing to provide her with a demanding amount of mail to deliver each day. *Id.* at ¶¶ 7, 9, 11. Without adequate time and an appropriate location to pump, Plaintiff Allen experienced painful engorgement and diminished milk supply. *Id.* at ¶ 12.

28.     Because the back of Plaintiff Allen's mail truck was very dark and subject to the heat and cold temperatures of the weather, she was often forced to open the back of the truck while she was pumping (which she was told to do by her supervisor). *Id.* at ¶ 8; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2). With the back door open, the mail truck is neither secure nor private, as members of the public can pass by, see inside, or even attempt to speak to Plaintiff Allen while she was inside. Ex. 4, Allen Dec. ¶ 8.

33.     Plaintiff George received only two **ten**-minute breaks and one thirty-minute lunch break during each shift. *See* Ex. 5, George Dec. ¶ 4. These breaks did not provide enough time to adequately pump. *Id.* at ¶ 9. Without adequate time and an appropriate location to pump, Plaintiff George experienced painful engorgement and diminished milk supply. *Id.* at ¶ 10.

36.     Plaintiff George was hesitant to take additional breaks because she was anxious that her supervisors would reprimand her. *Id.*

39.     The main cabin of the mail truck has no privacy, as it lacks a closed space in which to pump; members of the public often pass by and/or feel inclined to speak to city carriers. *Id.* at ¶ 7; Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3). Indeed, members of the public frequently approached the vehicle and asked if Plaintiff George was all right while she was pumping. Ex. 5, George Dec. ¶¶ 7, 10.

## ADDITIONAL MATERIAL FACTS

Additionally, Plaintiff provides the following additional facts that support denial of USPS's Motion for Summary Judgment:

1.     Prior to starting maternity leave, Plaintiff Masseur notified several USPS supervisors that she would need lactation accommodation upon her return to work. Ex. 3, Masseur

Dec. at ¶ 6; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 2-4 (Interrog. 1), 5 (Interrog. 2), 6 (Interrog. 3).

2.      When Plaintiff Masseur returned from maternity leave, she was told to pump in the locker room. Ex. 3, Masseur Dec. at ¶ 6; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 2 (Interrog. 1). Plaintiff Masseur objected because the locker room is adjacent to the bathroom, did not have a lock on the doors, and frequently had employees entering and exiting while Plaintiff Masseur was pumping. Ex. 3, Masseur Dec. at ¶¶ 6-7; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 3 (Interrog. 1).

3.      Additionally, the locker room was further unsuitable for pumping as it was not ventilated, a space where employees were changing clothes and unsanitary, was not being cleaned, and even had ants. Ex. 3, Masseur Dec. at ¶ 6, 9; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 3 (Interrog. 1).

4.      In November 2022, Plaintiff Masseur requested to use an empty office to pump, but that request was rejected. Ex. 3, Masseur Dec. at ¶ 7; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 2-3 (Interrog. 1).

5.      In February 2023, Plaintiff Masseur again spoke to a manager and explained that the locker room was not being cleaned, and coworkers were frequently entering the space while she was pumping. Ex. 3, Masseur Dec. at ¶ 8; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 3 (Interrog. 1).

6.      In April 2023, Plaintiff Masseur again addressed the lack of accommodation, reiterating that the break room was dirty, had ants, and was unsecure. Ex. 3, Masseur Dec. at ¶ 9; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 3 (Interrog. 1).

7.      That same month, Plaintiff Masseur was disciplined by a supervisor when she was unable to operate a machine due to her need to pump. Ex. 3, Masseur Dec. at ¶ 10; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 3 (Interrog. 1), 5 (Interrog. 2).

8.      Plaintiff Masseur's supervisors were aware of her lack of accommodations, yet offered no solution or support to ensure she was given proper accommodations. Ex. 3, Masseur Dec. at ¶ 14; Masseur Suppl. Resp. to Interrog. (ECF 49-8) at 2-4 (Interrog. 1), 5 (Interrog. 2), 6 (Interrog. 3).

9.      Accordingly, Plaintiff Masseur did not continue to inform her supervisors of her need for adequate break time or a private location to pump after April 28, 2023, because her employers' actions up until that point indicated that they would continue to be unwilling to provide adequate break time or a private place to pump. Ex. 3, Masseur Dec. ¶ 13.

10.     Plaintiff Allen gave birth twice during her employment with USPS: once in April 2021 and in September 2022; both times, Plaintiff Allen requested accommodations from USPS but was denied. Ex. 4, Allen Dec. ¶ 5; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2).

11.     Plaintiff Allen was required to pump in her mail truck; however, in December 2022, Plaintiff Allen informed her supervisor that the mail truck was an unsuitable place to pump because it would get stuffy and hot. Ex. 4, Allen Dec. ¶¶ 7-8; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2).

12.     In response, Plaintiff Allen's supervisor told her to "crack the back door," essentially opening the mail truck to the public. Ex. 4, Allen Dec. ¶ 5; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2).

13. Plaintiff Allen also did not receive adequate break time to pump. She was frequently pressured to pump as quickly as possible to finish her route in time. Ex. 4, Allen Dec. ¶ 11.

14. Plaintiff Allen's supervisors were aware of her lack of accommodations, yet offered no solution or support to ensure she was given proper accommodations. Ex. 4, Allen Dec. at ¶ 12; Def. Mem. Ex. 13, Allen Suppl. Resp. to Interrog. (ECF 64-16) at 2 (Interrog. 1), 3 (Interrog. 2).

15. Accordingly, Plaintiff Allen did not continue to inform her supervisors of her need for adequate break time or a private location to pump after April 28, 2023, because her employers' actions up until that point indicated that they would continue to be unwilling to provide adequate break time or a private place to pump. Ex. 4, Allen Dec. ¶ 13.

16. When Plaintiff George communicated to her supervisors that she needed lactation accommodation, they informed her that she could pump in the break room, the bathroom, or her mail truck. Ex. 5, George Dec. ¶ 6.

17. Plaintiff George requested to hang a sheet in the break room to provide a greater sense of privacy and security; this request was denied. *Id.*

18. Plaintiff George's mail truck had no privacy as the main cabin lacks a closed space in which to pump; further, the truck gets very cold in winter and hot in the summer and was unhygienic as the truck is regularly exposed to dust and potential contamination from mail and packages. *Id.* at ¶ 7;

19. Members of the public also frequently approached the mail truck while Plaintiff George was pumping to ask if she was all right. *Id.* at ¶ 10.

20. Nonetheless, Plaintiff George's supervisors told her the mail truck was the "best they could do." *Id.* at ¶ 7; Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3).

7

21. Plaintiff George's supervisors were aware of her lack of accommodations, yet offered no solution or support to ensure she was given proper accommodations. Ex. 5, George Dec. ¶ 10; Def. Mem. Ex. 18, George Suppl. Resp. to Interrog. (ECF 64-21) at 2 (Interrog. 1), 3 (Interrog. 2), 4 (Interrog. 3).

22. Accordingly, Plaintiff George did not continue to inform her supervisors of her need for adequate break time or a private location to pump after April 28, 2023, because her employers' actions up until that point indicated that they would continue to be unwilling to provide adequate break time or a private place to pump. Ex. 5, George Dec. ¶ 11.

23. USPS employees knew of the need to provide nursing mothers with a clean space in which to pump, but still failed to do so. Campbell's Email (ECF 40-3) at 9-10.

24. In addition to Plaintiffs, eight other women have provided declarations in the current record (prior to any collective action notice being provided) and identified more failures by USPS to accommodate them when they were nursing. *See* Bahlman Dec. (ECF 67-9); Berry Dec. (ECF 67-10); Davis Dec. (ECF 67-11); Maynard Dec. (ECF 67-12; Pryor Dec. (ECF 67-13); Reyes Dec. (ECF 67-14); Teap Dec. (ECF 67-15); Vanhoose Dec. (ECF 67-16).

25. Plaintiffs and several of the opt-in class members also know of other lactating mothers who were not accommodated by USPS. Ex. 3, Masseur Dec. at ¶ 15; Davis Dec. (ECF 67-11); Berry Dec. (ECF 67-10); Bahlman Dec. (ECF 67-9); Reyes Dec. (ECF 67-14); Teap Dec. (67-15); Vanhoose Dec. (ECF 67-16).

Dated: July 11, 2025                           Respectfully submitted,

                                               SIRI & GLIMSTAD LLP

                                               */s/ Leslie l. Pescia*
                                               Leslie L. Pescia (*pro hac vice*)
                                               Christopher Williams (D.C. Bar No. NY0537)
                                               745 Fifth Avenue, Suite 500
                                               New York, New York 10151
                                               Tel: (212) 532-1091
                                               E: lpescia@sirillp.com
                                               E: cwilliams@sirillp.com

                                               *Attorneys for Plaintiffs and the FLSA Collective*